**SERVICE LLOYD'S INSURANCE COMPANY d/b/a Service Casualty Insurance Company, Appellant,**

v.

**J.C. WINK, INC. d/b/a Americars, Appellee.**

No. 04–05–00038–CV.

Court of Appeals of Texas, San Antonio.

Oct. 5, 2005.

---

From the 166th Judicial District Court, Bexar County, Texas, Trial Court No. 2004–CI–00708; Martha Tanner, Judge Presiding.[1]

Robert D. Allen, Robert L. Berry, Baker & McKenzie, L.L.P., Dallas, for appellant.

Grace S. Bellomy, J. Ken Nunley, Nunley Davis Jolley Cluck Aelovoet L.L.P., Boerne, for appellee.

Sitting: CATHERINE STONE, Justice, KAREN ANGELINI, Justice, SANDEE BRYAN MARION, Justice.

## OPINION

Opinion by SANDEE BRYAN MARION, Justice.

Service Lloyd's Insurance Company brings this appeal from a judgment declaring that the company has a duty to defend one of its insureds, J.C. Wink., Inc., in a class action lawsuit brought against the insured by its former customers. We affirm the trial court's judgment to the extent that it concludes Service Lloyd's owes J.C. Wink a defense in the underlying class action lawsuit. However, we reverse the trial court's judgment to the extent that it concludes J.C. Wink has a valid claim for penalties and attorney's fees based upon Service Lloyd's alleged violation of article 21.55 of the Texas Insurance Code. Accordingly, we render judgment that J.C. Wink take-nothing on its article 21.55 claim.

---

1. The Honorable Pat Boone of the 57th Judicial District Court, Bexar County, Texas signed the order that is the basis of this appeal.

## BACKGROUND

J.C. Wink. Inc. ("Wink") is an auto dealership. During the course of its operations, it obtained a commercial general liability insurance policy from Service Lloyd's Insurance Company ("SLIC"). This liability policy, together with two consecutive policy renewals, provided insurance coverage for Wink from September 1997 through September 2000. The policy issued to the dealership provided errors and omissions ("E & O") coverage. Under the policy, SLIC is obligated to provide Wink a defense whenever Wink is accused of negligently violating any federal, state, or local truth-in-lending law.

Wink, and approximately seventeen other auto dealerships, were eventually sued by a class of their former customers in September of 2002.[2] The plaintiffs' petition alleges that, as a part of the purchase of their automobiles, Wink overcharged them in various ways. The petition claims Wink's conduct constitutes, among other things, a violation of the provisions of the Texas Finance Code known as the Motor Vehicle Installment Sales Act.

Wink, believing the underlying suit accused it of committing violations of state truth-in-lending laws, notified SLIC and requested a defense pursuant to the E & O provisions of its policy. SLIC, however, refused to tender a defense to Wink because it believed the factual allegations in the plaintiffs' class action petition failed to state a claim for violations of any federal, state, or local truth-in-lending laws. Wink subsequently filed a declaratory judgment action, seeking a declaration that SLIC owes it a defense in the underlying lawsuit. Wink also sought penalties and damages pursuant to article 21.55 of the Texas Insurance Code (prompt payment statute) and article 21.21 of the Texas Insurance Code (unfair claim settlement practices statute) based on SLIC's refusal to provide it with a defense.

Both parties filed motions for partial summary judgment in the declaratory judgment action, and the trial court granted Wink's motion for partial summary judgment and denied SLIC's motion. Pursuant to section 51.014(f) of the Civil Practice and Remedies Code, we granted SLIC permission to appeal the trial court's partial summary judgment ruling.[3]

## STANDARD OF REVIEW

We review a trial court's summary judgment ruling *de novo.* *Valores Corporativos, S.A. de C.V. v. McLane Co.,* 945 S.W.2d 160, 162 (Tex.App.-San Antonio 1997, writ denied). We will uphold a traditional summary judgment only when there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. *Tex. Commerce Bank, N.A. v. Grizzle,* 96 S.W.3d 240, 252 (Tex. 2002). In reviewing a traditional motion for summary judgment, we resolve every doubt and indulge every reasonable inference in the nonmovant's favor. *Id.* All evidence favorable to the nonmovant will be taken as true. *Id.* When both parties move for summary judgment and the trial court grants one motion and denies the other, we review the summary judgment evidence of both parties, determine all questions presented, and render the judgment that the trial court should have ren-

---

2. This proceeding arises out of Cause No.2002–CI–05453, styled *Ramos et al. v. Al's Auto Sales, et al.,* pending in the 288th Judicial District Court of Bexar County, Texas, the Honorable Lori Massey presiding.

3. Wink's motion for partial summary judgment did not address its claims under article 21.21. Those claims remain pending before the trial court.

dered. *See Bradley v. State ex rel. White,* 990 S.W.2d 245, 247 (Tex.1999).

## DISCUSSION

SLIC raises two complaints on appeal: (1) the pleadings in the underlying class action lawsuit do not trigger SLIC's duty to defend Wink under the E & O provisions of its policy because Wink is accused of committing acts outside the scope of its coverage; and (2) Wink is not entitled to penalties and attorney's fees under article 21.55 of the Texas Insurance Code because article 21.55 does not apply to claims for a defense under a commercial general liability policy.

## DUTY TO DEFEND

■ SLIC contends the trial court erred by granting summary judgment in Wink's favor because the pleadings in the underlying class action do not trigger its duty to defend Wink under the E & O provisions of its policy. Whether an insurer of a liability policy is obligated to defend the insured is a question of law to be decided by the court. *TIG Ins. Co. v. San Antonio YMCA,* 172 S.W.3d 652, 662 (Tex. App.-San Antonio, 2005, no pet. h.); *State Farm Gen. Ins. v. White,* 955 S.W.2d 474, 475 (Tex.App.-Austin 1997, no pet.). To determine an insurer's duty to defend, we apply the "eight-corners" rule, comparing the factual allegations in the four corners of the pleadings with the language of the four corners of the insurance policy. *National Union Fire Ins. Co. v. Merchants Fast Motor Lines,* 939 S.W.2d 139, 141 (Tex.1997).

■ When we apply the rule, we must focus on the factual allegations that show the origin of the damages rather than on the legal theories alleged, and give a liberal interpretation to the allegations in the petition. *Id.; TIG Ins.,* at 662. We may not, however, read facts into the pleadings, look outside the pleadings, or imagine factual scenarios that might trigger coverage. *National Union Fire,* 939 S.W.2d at 142. An insurer's duty to defend arises if the factual allegations against the insured, when fairly and reasonably construed, state a cause of action potentially covered by the policy. *Id.* at 141. A duty to defend any of the claims against an insured requires the insurer to defend the entire suit. *Stumph v. Dallas Fire Ins. Co.,* 34 S.W.3d 722, 728 (Tex.App.-Austin 2000, no pet.). If a petition does not allege facts falling within the scope of coverage, an insurer is not required to defend a suit against its insured. *National Union Fire,* 939 S.W.2d at 141.

■ However, if the complaint does not state facts sufficient to clearly bring the case within or without the coverage, the general rule is that the insurer is obligated to defend if there is, potentially, a case under the complaint within the coverage of the policy. *Id.; TIG Ins.,* 2005 WL 1629801, *8. "Stated differently, in case of doubt as to whether or not the allegations of a complaint against the insured state a cause of action within the coverage of a liability policy sufficient to compel the insurer to defend the action, such doubt will be resolved in insured's favor." *National Union Fire,* 939 S.W.2d at 141. (citations omitted). Accordingly, we resolve all doubts regarding the duty to defend in favor of the duty. *King v. Dallas Fire Ins.,* 85 S.W.3d 185, 187 (Tex. 2002); *TIG Ins.,* at 662.

## THE POLICY

The policy provisions at issue in this case provide as follows:

**COVERAGE A. TRUTH–IN–LEASING AND TRUTH IN LENDING ERRORS AND OMISSIONS**

1. Insuring Agreement

a. We will pay sums an "insured" legally must pay as damages arising from negligent errors or omissions which result in civil violation of:

(1) Any federal, state or local Truth–in–Leasing statute; or

(2) Any federal, state or local Truth–in–Lending statute.

B. We have the right and duty to investigate, defend and settle any claim or "suit" for these damages. However, we have no duty to investigate, defend or settle a claim or "suit" not covered by this insurance. Our payment of the Limit of Insurance ends our duty to investigate, defend, or settle.

2. Exclusions

This coverage does not apply to:

a. "Bodily injury," "property damage," "personal injury," or "advertising injury";

b. Loss, claims, or "suits" arising from:

1. Dishonest, malicious, fraudulent, criminal or intentional acts or omissions; however, this exclusion does not apply to you if such act or omission was communicated by your employee (other than a partner, director, or executive officer), without your direction or your knowledge; or

2. Liability of others assumed by the "insured" under a contract or agreement.

* * *

**POLICY PERIOD, COVERAGE TERRITORY**

This Coverage Form applies only to covered errors and omissions which occur while this endorsement is in effect and applies only in the United States of America, its territories or possessions, Puerto Rico, or Canada.

SLIC first argues it has no duty to defend Wink in the underlying class action lawsuit because plaintiffs' pleadings do not allege facts showing a violation of a statute within the meaning of the term "Truth–in–Lending statute" as it is used in the policy. Although not defined in the policy, SLIC alleges the term "Truth–in–Lending statute" refers to statutes entitled "Truth–in–Lending," specifically "the Federal Truth in Lending Act and substitutes thereto." SLIC thus maintains that it owes no duty to defend Wink because the underlying pleadings fail to demonstrate a cause of action under any statute entitled "Truth–in–Lending." Wink argues SLIC's duty to defend it under the policy is triggered whenever Wink is alleged to have violated any statute that has as its purpose the same objectives as the federal Truth–in–Lending Act ("TILA"). Wink thus maintains that because plaintiffs have alleged that it committed numerous violations of the Motor Vehicle Installment Sales Act, a statute that it believes has the same objectives as the federal TILA, it is entitled to a defense under the truth-in-lending provisions of the policy.

We construe insurance policies according to the rules governing contract construction. *American Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003). Whether a contract is ambiguous is a question of law. *Id.* If policy language has a certain or definite legal meaning or interpretation, then it is not ambiguous and we construe it as a matter of law. *Id.* An ambiguity does not arise merely because the parties offer conflicting interpretations of the policy language. *Id.* Instead, an ambiguity exists only if the contract is susceptible to two or more reasonable interpretations. *Id.* When policy language is ambiguous or inconsistent, and susceptible to more than one reasonable interpretation, a court resolves the uncer-

tainty by adopting a construction that favors the insured. *National Union Fire Ins. Co. v. Hudson Energy Co.*, 811 S.W.2d 552, 555 (Tex.1991). We thus construe the insurance policy strictly against the insurer and in favor of coverage. *Barnett v. Aetna Life Ins.*, 723 S.W.2d 663, 666 (Tex.1987).

When construing an instrument, our primary concern is to give effect to the written expression of the parties' intent. *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133 (Tex.1994). We will examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex.2003). "No single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument." *Id.*

Here, we believe the policy at issue can be given a definite legal meaning and is not reasonably susceptible to more than one meaning; therefore, we hold the policy is unambiguous as a matter of law. The policy specifies SLIC will provide Wink a defense against claims arising from negligent errors or omissions resulting in civil violation of "[a]ny federal, state or local Truth–in–Lending statute." We see nothing in the policy's language that would limit Wink's coverage to actions based on alleged violations of the federal TILA and its specific state or local counterparts. *See Fredericks v. Universal Underwriters Ins. Co.*, 140 Or.App. 269, 915 P.2d 472, 476 (1996) (holding policy provision promising defense costs for an alleged violation of

"ANY FEDERAL, STATE, OR LOCAL * * * TRUTH IN LENDING * * * LAW" was unambiguous and required a defense whenever a cause "allege[d] facts that could be a violation of any law that has as its purpose the same objectives as the federal Truth–in–Lending Act (TILA) and its state and local counterparts"). We therefore hold the policy's plain language suggests that it contemplates coverage for actions based on a variety of truth-in-lending laws, including the federal TILA, the federal TILA's specific state and local counterparts, and such other statute that has as its purpose the same objectives and requirements as the federal TILA.

### THE MOTOR VEHICLE INSTALLMENT SALES ACT

Turning to the underlying class action petition, we must determine whether facts are alleged that give rise to a duty to defend because the allegations, if true, demonstrate violations of truth-in-lending-laws. The underlying pleadings allege Wink violated various provisions of the Motor Vehicle Installment Sales Act ("MVISA"). *See* TEX. FIN.CODE ANN. §§ 348.001–348.518 (Vernon 1998 & Supp. 2004–2005). According to the pleadings, plaintiffs claim Wink violated the MVISA by, among other things, misrepresenting that it was not charging the plaintiffs interest on the sales tax associated with their purchases; charging the plaintiffs more periodic payments than required to pay off their loans; charging the plaintiffs illegal repossession charges; and charging the plaintiffs bogus payoff charges.

Although the MVISA is not a state substitute for the federal TILA,[4] it appears to

---

4. Section 226.29 of the Code of Federal Regulations provides that any state may apply to the Board of Governors of the Federal Reserve System to exempt a class of transactions within the state from the requirements of the

federal TILA and its implementing regulation (Regulation Z) if the state has a law substantially similar to the federal law and has an adequate provision for enforcement. 12 C.F.R. § 226.29. If an exemption is

serve the same objectives as the federal TILA. *Compare* 15 U.S.C. § 1601 (indicating the purpose of the federal TILA is "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit.") *with O.R. Mitchell Motors, Inc. v. Bell,* 528 S.W.2d 856, 860 (Tex.App.-San Antonio 1975, writ ref'd n.r.e.) ("In view of the clear legislative intent to protect buyers by preventing abusive and deceptive practices by sellers, and to achieve this objective by regulating the conduct and activities of sellers, there can be no doubt that the legislature intended to achieve its goal by imposing duties on the persons who, in the legislative judgment, had, under the old law, been guilty of abusive and deceptive practices. Thus, there can be no doubt that the purpose of Article 7.02 [one of the predecessor statutes to the MVISA,] was to impose duties on sellers, the persons who, in the ordinary course of business, as did defendant here, present to the buyer a document ready for the buyer's signature.").

Moreover, MVISA contains provisions establishing substantive disclosure requirements similar to those of the federal TILA. The federal TILA requires creditors to make certain disclosures, including, among others, these: the identity of the creditor making the disclosures; the amount financed; itemization of amount financed; the finance charge; the annual percentage rate; the number, amounts, and timing of payments scheduled to repay the obligation; the total of payments; and the total sale price.[5] Similarly, the MVISA requires a retail installment contract to contain, among other specific disclosures, these: the name of the retail seller; the amount financed; itemization of amount financed; the finance charge; the annual percentage rate; the number, amounts, and timing of payments scheduled to repay the obligation; the total of payments; and the total sale price. TEX. FIN.CODE ANN. § 348.009 (Vernon 1998) (incorporating into the MVISA the disclosure requirements of the federal TILA's implementing regulation (12 C.F.R. Part 226 (Regulation Z))); § 348.102 (providing a list of mandatory disclosures for retail installment contracts).

■ The fact that the MVISA and the federal TILA/Regulation Z share similar objectives and require many of the same disclosures lead us to believe that the MVISA's disclosure provisions are state truth-in-lending laws for purposes of this appeal.[6] Having resolved this issue, we now consider whether the underlying pleadings contain allegations demonstrating that Wink may have violated the MVISA's disclosure provisions.

■ As noted above, retail sellers in Texas are required to disclose to a consumer a payment schedule, including the number, amounts, and timing of payments scheduled to repay the obligation. TEX. FIN.CODE ANN. § 348.009; *see also* 12 C.F.R. § 226.18. The underlying lawsuit

granted, the disclosures required by the applicable state law (except any additional requirements not imposed by federal law) shall constitute the disclosures required by the federal act. *Id.* The parties have not cited, nor can we find, any authority demonstrating that Texas has obtained an exemption from the Board regarding the MVISA.

5. This list of disclosures from the federal TILA is a non-exhaustive list. *See* 15 U.S.C. § 1638(a); 12 C.F.R. § 226.18.

6. Our holding is limited to those provisions of the statute that specifically relate to disclosure. We do not decide whether any other provisions within the MVISA may be considered state truth-in-lending laws.

alleges, among other things, that Wink "charg[ed] more periodic payments than required to pay off the loan." By disclosing a payment schedule that instructed its customers to make more periodic payments than they were obligated to make, Wink arguably made an inaccurate or misleading disclosure to its customers. When a seller discloses the required terms relating to a transaction, it must do so accurately. *See Roberts v. Fleet Bank*, 342 F.3d 260, 266 (3rd Cir.2003) (holding creditors must accurately disclose the federal TILA's requirements); *Smith v. Chapman*, 614 F.2d 968, 977 (5th Cir.1980) ("A misleading disclosure is as much a violation of TILA as a failure to disclose at all."). Therefore, if Wink did not accurately disclose to its customers the number of payments scheduled to repay the obligation, Wink may have violated the MVISA because an inaccurate or misleading disclosure is as much a violation of the MVISA as a failure to disclose at all. SLIC's duty to defend under the truth-in-lending provisions of the policy is thus triggered by the allegations in the underlying lawsuit.[7]

### THE POLICY PERIOD

■ SLIC next argues that the factual allegations in the underlying petition do not give rise to SLIC's duty to defend Wink because the underlying pleadings do

---

7. *See generally St. Paul Ins. Co. v. Tex. Dept. of Transp.*, 999 S.W.2d 881, 887 (Tex.App.-Austin 1999, pet. denied) (noting once coverage is found for any portion of a suit, an insurer must defend the entire suit). The underlying lawsuit further alleges that Wink made misrepresentations that it was *not* charging the plaintiffs interest on the amount of the sales tax associated with their purchases. The underlying suit also alleges Wink disclosed to the plaintiffs that they were obligated to pay certain fictitious payoff charges. Although the MVISA may not have required Wink to include information concerning the interest on the sales tax or applicable payoff fees in its retail installment contracts, *see* TEX. FIN.CODE

not allege Wink harmed the plaintiffs during the policy period of September 1997 through September 2000. The underlying petition provides:

4.2 Plaintiffs

Each Plaintiff named in ¶ 4.1 is a buyer of a used car from an independent dealer in Texas after October 1, 1993, in a sale that was financed by the seller and in which the sales tax was deferred, pursuant to Section 152.047 of the Texas Tax Code. Each Plaintiff was forced to pay unfair, unjust, illegal and excessive fees and interest charges in the retail installment purchase in the Defendants' violations of Chapter 7 of the Texas Credit Code, Rule § 3.74 of the Texas Administration Code, and other applicable statutes and codes. The named Plaintiffs are resident citizens of Texas. The named Plaintiffs sue individually and as Representatives of a Class of all others who are similarly situated.

\* \* \*

5.1 After October 1, 1993 Plaintiffs bought used cars from the Defendant Dealers. Those cars were sold pursuant to seller-financed retail installment sales contracts.

ANN. §§ 348.009, 348.102, we cannot say that a misrepresentation or inaccuracy regarding these non-mandatory disclosures could not also be a violation of the MVISA. Whenever a retail seller includes additional information in its retail installment contract pursuant to the provisions of the MVISA, *see id.* § 348.010 ("Information not required by this chapter may be included in a retail installment contract."), we believe the seller is obligated to make such disclosures accurately and truthfully. *See Fleet Bank*, 342 F.3d at 266; *Chapman*, 614 F.2d at 977. Thus, these allegations could also trigger SLIC's duty to defend Wink in the underlying suit.

Construing the factual allegations of the underlying petition liberally, the petition indicates the plaintiffs' damages potentially occurred during Wink's policy period. While the underlying petition does not give specific dates for the disputed sales transactions, it does allege that all of the defendant car dealers, including Wink, sold the plaintiffs their cars between the dates of October of 1993 and September of 2002 (the date of the lawsuit). This time period clearly encompasses Wink's policy period. " 'Where the complaint does not state facts sufficient to clearly bring the case within or without the coverage, the general rule is that the insurer is obligated to defend if there is, potentially, a case under the complaint within the coverage of the policy.' " *National Union Fire Ins. Co.*, 939 S.W.2d at 141 (citations omitted). Because the pleadings potentially allege damages from conduct occurring during the policy periods, SLIC owes Wink a defense.

### NEGLIGENT ERRORS & OMISSIONS

SLIC also argues that the allegations raised in the underlying suit fall outside the scope of the policy because they do not reveal the plaintiffs' damages arose from Wink's negligent errors or omissions. The petition from the underlying suit provides:

## FACTUAL BASIS FOR THE PLAINTIFFS' CLAIMS

* * *

5.2 The Texas Tax Code, effective October 1, 1993, permitted automobile dealers, who used seller-financed retail installment sales contracts, to defer the payment of sales tax to the State Comptroller until it was collected from the car buyer. *See* TEX. TAX CODE § 152.407. After this statute went into effect, automobile dealers who collect and pay sales tax pursuant to Rule § 3.74 of the Texas Adminis-

tration Code were permitted to include the sales tax as part of the Amount Financed. The sales tax was to be collected and no interest charged as a portion of each periodic installment payment over the life of the contract, and then reported and paid to the State Comptroller quarterly or periodically, as collected.

5.3 Defendant Dealers took advantage of this deferred sales tax structure to contract for, charge, or collect interest or fees from the Plaintiffs in an amount that was unfair, unjust and in excess of that allowed by law.

Additional Illegal Practices

5.4 Among other illegal Seller–Financed Sales practices used by the Defendants to overcharge car buyers include: (1) use of excessive finance charges, (2) charging more periodic payments than required to pay off the loan, (3) illegal repossession charges, (4) improper late fees, (5) bogus payoff charges, (6) non-approved warranty policies, and (7) non-payment of the buyer's sales tax to the state all in violation of the provisions of Chapter 7 of the Texas Credit Code, Rule § 3.74 of the Texas Administration Code, and other applicable statutes and codes. The amounts collected were unfair, unjust and in excess of that allowed by law.

■■■ Wink does not dispute that the factual allegations found within paragraph 5.3 of the underlying petition fail to trigger SLIC's duty to defend because the allegations in this paragraph concern intentional conduct, which falls outside the scope of its policy with SLIC. Wink does dispute, however, SLIC's contention that the allegations found within paragraph 5.4 do not give rise to SLIC's duty to defend. Para-

graph 5.4 of the underlying petition refers to acts committed by Wink without reference to Wink's intent. As a result, it is unclear whether paragraph 5.4 concerns negligent or intentional conduct. Once again, where the complaint does not state facts sufficient to clearly bring the case within or without the coverage, the insurer is obligated to defend if there is potentially a case under the complaint within the policy coverage. *See National Union Fire Ins. Co.*, 939 S.W.2d at 141. Because the factual allegations contained within paragraph 5.4 indicate the plaintiffs may have a complaint within the coverage of the policy, we cannot say the underlying suit falls outside the scope of the policy. *See id.*

SLIC also argues the plaintiffs' underlying petition does not include any allegations that fall within the scope of the terms "error" and "omission" as those terms are used in the policy. These terms, however, are not defined in the policy. We therefore give these terms their ordinary and generally accepted meaning. *Sec. Mut. Cas. Co. v. Johnson*, 584 S.W.2d 703, 704 (Tex.1979) (recognizing we must give insurance policy language its ordinary and generally accepted meaning unless the policy shows that the words used are intended to impart a technical or different meaning.). An error is "an act or condition of ignorant or imprudent deviation from a code of behavior; an act involving an unintentional deviation from truth or accuracy; an act that through ignorance, deficiency, or accident departs from or fails to achieve what should be done." WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 423 (9th ed.1991). The term omission is defined as "something neglected or left undone; apathy toward or neglect of duty; the act of

omitting; the state of being omitted." *Id.* at 823.

In paragraph 5.4 of the plaintiffs' petition, it is alleged that Wink used excessive finance charges; charged more periodic payments than required to pay off the loan; charged illegal repossession charges; charged improper late fees; charged bogus payoff charges; used non-approved warranty policies; and failed to pay the buyer's sales tax to the state. It is unclear from the petition whether plaintiffs are accusing Wink of intentionally committing these acts. Because the aforementioned allegations may very well be the result of Wink's carelessness or neglect, we hold the plaintiffs' petition includes allegations that may fall within the scope of the terms "errors" or "omissions" as those terms are used in the policy. *See National Union Fire Ins. Co.*, 939 S.W.2d at 141.

 Lastly, SLIC claims the policy's intentional injury exclusion precludes coverage.[8] As previously discussed, it is unclear whether the allegations raised in paragraph 5.4 of the plaintiffs' petition concern negligent or intentional conduct. Consequently, we hold the policy's intentional injury exclusion does not preclude coverage because the pleadings potentially allege damages arising from negligent conduct committed during the policy periods.

### ARTICLE 21.55 OF THE TEXAS INSURANCE CODE

 Lastly, SLIC complains the trial court erred by concluding Wink has a valid cause of action under article 21.55 of the Texas Insurance Code. SLIC argues that article 21.55 does not apply to a duty to defend. We agree.

---

8. The policy provides: "This coverage does not apply to ... Loss, claims, or 'suits' arising from ... intentional acts or omissions...."

Article 21.55 " 'establishes procedures for the prompt payment of insurance claims, including the acknowledgment of an insured's notice of a claim.' " *Northern County Mut. Ins. Co. v. Davalos,* 140 S.W.3d 685, 690 (Tex.2004). The article generally requires insurers to either accept or reject a claim within a prescribed period or explain why it needs more time to investigate. *Id.;* TEX.REV.CIV. STAT. ANN. art. 21.55 § 3 (Vernon Supp.2004–2005). Article 21.55 further provides for the award of penalties and attorney's fees for its violation.[9] The article defines a "claim" as "a first party claim made by an insured or a policyholder under an insurance policy or contract or by a beneficiary named in the policy or contract that must be paid by the insurer directly to the insured or beneficiary." *Id.* § 1(3).

SLIC submits that article 21.55 applies only to first-party claims based on the Fifth Court of Appeals's holding in *TIG Ins. Co. v. Dallas Basketball, Ltd.,* 129 S.W.3d 232 (Tex.App.-Dallas 2004, pet. denied). In *Dallas Basketball, Ltd.,* the court concluded that a request for a defense is not a first-party claim for money to be paid directly to the insured; therefore, article 21.55 does not apply to claims for a defense. 129 S.W.3d at 239. The court stated, "[t]he entire structure of article 21.55 presumes a tangible, measurable loss suffered by the insured for which he seeks payment from the insurance company. Any attempt to apply the statute's structure to a claim for a defense is unworkable and, based on the language of the statute, clearly unintended by the legislature." *Id.*

The court explained:

First, we note that article 21.55 is entitled "Prompt Payment of Claims." A

demand for a defense under a liability policy is not a claim for payment. It is a demand that the insurance company provide a legal defense to the insured as required by the policy. The insurance company is not required to send a payment to the insured, prompt or otherwise, in response to a claim for a defense.

Next, article 21.55's definition of the term "claim" requires that the claim be a "first party claim ... that must be paid by the insurer directly to the insured or beneficiary." When an insurance company provides its insured with a defense, the company then controls the defense and pays the attorneys' fees associated with the case to the attorney engaged to represent the insured. The insured does not receive any direct payment as required by article 21.55.

*Id.* (citations omitted).

Next, the court considered the insured's argument that, due to the insurer's "refusal to provide them with a defense, they have been forced to pay for their own legal representation and their claim for reimbursement of the defense costs is a first-party claim to be paid directly to them." *Id.* at 240. The court rejected this argument because it determined a claim for reimbursement is not a claim under the policies, but rather a common law claim for breach of contract damages. *Id.*

The court's analysis further provided:

Our conclusion that a claim for a defense is not a "claim" to which article 21.55 was intended to apply is further supported by the fact that both the statute's deadlines and its consequences for fail-

---

9. *Id.* § 6. When an insurance company does not comply with the requirements of the statute, the company is liable to pay "in addition to the amount of the claim, 18 percent per annum of the amount of the claim as damages, together with reasonable attorneys fees." *Id.*

ing to meet those deadlines presume that the insured's claim is one for compensation for a covered loss rather than for a defense. Under section 3 of article 21.55, the time period within which the insurance company must accept or reject a claim begins to run from the date the company receives all information necessary to secure proof of the insured's loss. At the time the insured makes his claim for a defense, however, he has not necessarily incurred any legal expenses or suffered any actual loss. He has merely been sued. To equate being made the subject of a lawsuit with suffering a compensable loss would contort the statute's plain and common meaning. Because the deadline to accept or reject a claim begins to run when the insurer receives proof of the insured's loss, the deadline has no meaning when applied to a claim for a defense.

The penalty imposed on insurers who fail to meet the statutory deadlines also has no meaning when applied to claims for a defense. Under section 6 of article 21.55, insurers that do not meet the requirements of article 21.55 are liable to pay the insured "in addition to the amount of the claim, 18 percent per annum of the amount of such claim as damages. . . ." A claim for a defense has no "amount" to which the section 6 penalty may be applied because the claim is not for payment of money but for services to be rendered. As discussed above, to the extent the insured pays for his own defense and seeks to be reimbursed for these payments, his claim for reimbursement is not a claim under the policy but rather a common law claim for damages. Even if such reimbursement claims could be used for purposes of calculating the penalty owed, in many cases an insured may be unable to afford to hire and pay his own defense counsel.

In such cases, the monetary value of the defense claim would be mere speculation. The insureds who are incapable of paying their own attorney's fees when they are sued would be the only ones unable to impose the penalty when the company wrongfully refuses to defend them. Such a result is irrational.

*Id.* (citations omitted).

Wink responds that *Dallas Basketball, Ltd.* stands alone in holding that article 21.55 does not apply to claims for a defense under a commercial general liability policy. Wink claims the Fifth Court's holding in *Dallas Basketball, Ltd.* is contrary to the holdings of other Texas state and federal courts, which have applied article 21.55 to claims for a defense. *See ATOFINA Petrochemicals, Inc. v. Evanston Ins. Co.,* 104 S.W.3d 247, 252 (Tex. App.-Beaumont 2003, pet. granted); *Northern County Mut. Ins. Co. v. Davalos,* 84 S.W.3d 314, 318–19 (Tex.App.-Corpus Christi 2002), *rev'd on other grounds,* 140 S.W.3d 685 (Tex.2004); *Luxury Living, Inc. v. Mid–Continent Cas. Co.,* No. Civ. A. H–02–3166, 2003 WL 22116202, *20 (S.D.Tex. Sept.10, 2003); *Primrose Operating Co. v. National Am. Ins. Co.,* No. Civ. A. 5:02–CV–101–C, 2003 WL 21662829, *3 (N.D.Tex. July 15, 2003), *aff'd in part and rev'd in part on other grounds,* 382 F.3d 546 (5th Circ.2004); *Westport Ins. Corp. v. Atchley, Russell, Waldrop & Hlavinka, L.L.P.,* 267 F.Supp.2d 601, 632 n. 19 (E.D.Tex.2003); *Ryland Group, Inc. v. Travelers Indem. Co.,* No. Civ. A–00–CA–233 JRN, 2000 WL 33544086, at *11–12 (W.D.Tex.2000). Wink submits that, based on these authorities, the defense owed to it by SLIC is a first-party claim under article 21.55.

We agree with the rationale enunciated by our sister court in *Dallas Basketball, Ltd.;* therefore, like the Fifth Court of Appeals, we hold that article 21.55 does

not apply to claims for a defense.[10] We believe that an insured's claim for defense costs is not a "first party claim" as that term is used in article 21.55. *Luxury Living*, 2003 WL 22116202, at *20; *Ryland Group*, 2000 WL 33544086, at *11–12.

CONCLUSION

Based on the foregoing, we affirm the trial court's judgment to the extent it concludes SLIC owes Wink a defense in the underlying class action lawsuit. However, we reverse the trial court's judgment to the extent it concludes Wink has a valid claim for penalties and attorney's fees based upon SLIC's alleged violation of article 21.55 of the Texas Insurance Code. Accordingly, we render judgment that Wink take-nothing on its article 21.55 claim.

Concurring and dissenting opinion by CATHERINE STONE, Justice.

CATHERINE STONE, Justice, concurring and dissenting.

I concur in the opinion of the court affirming the trial court's judgment regarding SLIC's duty to defend J.C. Wink in the underlying class action lawsuit. I respectfully dissent, however, from the court's opinion reversing and rendering judgment that J.C. Wink take nothing from SLIC on its article 21.55 claim.

The majority holds that article 21.55 of the Texas Insurance Code applies only to first-party claims based on the Fifth Court of Appeals's holding in *TIG Insurance Co. v. Dallas Basketball, Ltd.*, 129 S.W.3d 232 (Tex.App.-Dallas 2004, pet. denied). (Slip op. at 19). The Fifth Court's holding in *Dallas Basketball, Ltd.*, however, is one of the only cases to hold that article 21.55 does not apply to claims for a defense. The majority of courts that have addressed the issue have held article 21.55 applies to claims for a defense. *See ATOFINA Petrochemicals, Inc. v. Evanston Ins. Co.*, 104 S.W.3d 247, 252 (Tex.App.-Beaumont 2003, pet. granted); *Northern County Mut. Ins. Co. v. Davalos*, 84 S.W.3d 314, 318–19 (Tex.App.-Corpus Christi 2002), *rev'd on other grounds*, 140 S.W.3d 685 (Tex.2004); *Luxury Living, Inc. v. Mid–Continent Cas. Co.*, No. Civ. A. H–02–3166, 2003 WL 22116202, *20 (S.D.Tex. Sept.10, 2003); *Primrose Operating Co. v. Nat'l American Ins. Co.*, No. Civ. A. 5:02–CV–101–C, 2003 WL 21662829, *3 (N.D.Tex. July 15, 2003), *aff'd in part and rev'd in part on other grounds*, 382 F.3d 546 (5th Circ.2004); *Westport Ins. Corp. v. Atchley, Russell, Waldrop & Hlavinka, L.L.P.*, 267 F.Supp.2d 601, 632 n. 19 (E.D.Tex.2003);

---

**10.** *See* 129 S.W.2d at 239. We note that the Texas Supreme Court has suggested that article 21.55 may apply to claims for defense. *See State Farm Fire and Casualty Co. v. Gandy*, 925 S.W.2d 696, 714 (Tex.1996). In *Gandy*, the court commented:

> For example, when issues of coverage and the duty to defend arise, it is not unusual for I or D or both to attempt to adjudicate them before P's claim is adjudicated. Disputes between I and D can often be expeditiously resolved in an action for declaratory judgment while P's claim is pending. If successful, D should be entitled to recover attorney fees. TEX. CIV. PRAC. & REM.CODE ANN. § 37.009; TEX. INS.CODE ANN. art. 21.55, § 6. D may also be entitled to recover a

penalty against I equal to eighteen percent of the claim. TEX. INS.CODE art. 21.55, § 6. *Id.* The court further stated:

> We believe this balancing of interests minimizes any hardship on an insured defendant. Determining an insurer's obligations before its insured incurs liability benefits both the insurer and the insured by removing that uncertainty. An insurer has ample disincentives to deny coverage or a defense without good reason: it will be liable for its own attorney fees in litigating the dispute and may be liable for the insured's attorney fees, a statutory penalty, and even bad faith damages.

*Id.* However, these statements are dicta and made without any accompanying analysis.

*Ryland Group, Inc. v. Travelers Indem. Co.*, No. Civ. A–00–CA–233 JRN, 2000 WL 33544086, at *11–12 (W.D.Tex.2000); *see also State Farm Fire & Cas. Co. v. Gandy*, 925 S.W.2d 696, 714 (Tex.1996) (suggesting that article 21.55 may apply to claims for defense). Because I agree with the reasoning of these courts, I believe J.C. Wink has a valid claim for penalties and attorney's fees under article 21.55.