Affirmed in Part and Reversed and Remanded in Part and Opinion filed
July 6, 2006








 

Affirmed
in Part and Reversed and Remanded
in Part and Opinion filed July 6, 2006.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-05-00487-CV

____________

 

PINE OAK BUILDERS, INC., Appellant

 

V.

 

GREAT AMERICAN LLOYDS INSURANCE
COMPANY AND MID-CONTINENT CASUALTY COMPANY, Appellees

 



 

On Appeal from the 234th
District Court

Harris County, Texas

Trial Court Cause No. 03-56367

 



 

O P I N I O N








Appellant Pine Oak Builders, Inc., builds homes. 
Appellees, Great American Lloyds Insurance Co. and Mid-Continent Casualty Co.,
sold Commercial General Liability (CGL) insurance policies to Pine Oak.  Pine
Oak was subsequently sued by several homeowners, who alleged damages resulting
from faulty construction.  Pine Oak brought the present lawsuit to enforce
lawsuit defense and liability indemnification provisions in the CGL policies.[1] 
Pine Oak moved for summary judgment, arguing that it proved its rights to
defense and indemnity as a matter of law and that it is entitled to damages
under article 21.55 of
the Texas Insurance Code for appellees= failure to promptly pay its defense
costs. 
In a joint motion for summary judgment, appellees argued that the policies did not cover the plaintiffs= claims in the underlying lawsuits.  The trial court
denied Pine Oak=s motion and granted the appellees= motion.

The issues raised on appeal include (1) whether appellees
owe a duty to defend in the underlying litigations, (2) whether appellees owe a
duty to indemnify in the underlying litigations, (3) whether Pine Oak is entitled to damages under
article 21.55 of the Texas Insurance Code, and (4) whether Pine Oak is entitled
to a prospective award of attorney=s fees for its defense costs in the
underlying litigations.  Finding that Great American owes a duty to defend in
certain of the litigations and may owe a duty to indemnify in certain of the
litigations, we affirm the trial court=s summary judgment
in part and reverse and remand in part.

I.  Background








Great American issued a succession of one-year CGL policies
to Pine Oak, covering the period from April 5, 1993, to April 5, 2001. 
Mid-Continent issued two CGL policies to Pine Oak, covering from April 5, 2001,
to April 5, 2003.  Each of the policies provides that the insurer Awill pay those
sums that the insured becomes legally obligated to pay as damages because of >bodily injury= or >property damage= to which this
insurance applies.  [The insurer has] the right and duty to defend any >suit= seeking those
damages.@  The policies
further state that the insurance agreement applies Aonly if:  (1) the >bodily injury= or >property damage= is caused by an >occurrence= that takes place
in the >coverage territory= and (2) the >bodily injury= or >property damage= occurs during the
policy period.@  The policies define Aoccurrence@ as Aan accident,
including continuous or repeated exposure to substantially the same general
harmful conditions.@  AProperty damage@ is defined as Aphysical injury to
tangible property, including all resulting loss of use of that property.  All
such loss of use shall be deemed to occur at the time of the physical injury
that caused it.@

The policies additionally contain certain exclusions.  For
example, the Ayour work@ exclusion precludes coverage for Aproperty damage@ to A>your work= arising out of it or any part of it
and included in the >products completed operations hazard.=@  Both of the policies issued by
Mid-Continent and the Great American policy beginning in April 2000 contain
exclusions precluding coverage for property damage arising out of the AExterior Insulating and Finish System
hazard.@  The Exterior Insulating and Finish
System, or AEIFS,@ is a synthetic-stucco type of exterior wall cladding.  As explained
below, most of the plaintiffs in the lawsuits underlying this coverage lawsuit
allege damages relating to EIFS application on their homes.  In their motion
for summary judgment, appellees argued principally that the insuring language
and exclusions in the policies operated to exclude coverage of the underlying
lawsuits.








There
are five underlying lawsuits, each brought by a homeowner who purchased a Pine
Oak home either directly from the homebuilder or from a prior owner.  Each home
in question was built in the late 1990s.  In the Sorrell lawsuit, the
plaintiffs allege that either EIFS was not properly installed on their home or
that use of EIFS on their home was not a proper application of the product. 
They further allege that the EIFS permitted water infiltration of the home
every time there was a significant rainfall.  They assert that the accumulation
of moisture continuously caused damage and that new, independent damage
occurred with each rainfall.  The Fourrier plaintiffs make the same claims
regarding EIFS as the Sorrell plaintiffs, but they additionally allege that (1)
an inadequate chimney cap was installed, (2) insufficient grade clearance was
permitted at column bases in the rear of the home, and (3) no expansion joint
was installed in the second level floor line.  The Glass plaintiffs allege
various problems relating to the construction of a balcony in the rear of their
home.  Although their claims include allegations of resulting water damage,
they do not make any EIFS-related claims.  In the Vint lawsuit, the plaintiffs
make EIFS-related claims similar to those of the Sorrell and Fourrier
plaintiffs.  They further allege that improper construction of the roof has
caused it to sag.  In the Barkley claim, the plaintiff alleges that the EIFS on
his home failed and caused damages.  He further alleges various other
construction defects, including inadequate draining, venting, and caulking, and
improper sprinkler head installation.  Also in the Barkley lawsuit, two
co-defendants filed cross-actions alleging that Pine Oak failed to properly
construct the home.

II.  Duty
to Defend

In its
first three issues, Pine Oak contends that the trial court erred in granting
appellees= motion for summary judgment and denying Pine Oak=s motion on the question of appellees= duty to defend Pine Oak in the
underlying lawsuits.  In their motion, appellees argued that as a matter of law
they did not have a duty to defend.  In its motion, Pine Oak argued that as a
matter of law appellees did have a duty to defend.  We utilize the normal standards
of review in considering the trial court=s grant of appellees= motion and denial of Pine Oak=s motion.  See Tex. R. Civ. P. 166a(c); Fort Worth
Osteopathic Hosp., Inc. v. Reese, 148 S.W.3d 94, 99 (Tex. 2004).  When, as
here, both parties have moved for summary judgment, each party must carry its
own burden, and neither party can prevail simply because the other party failed
to carry its burden of proof.  Pa. Pulp & Paper Co. v. Nationwide Mut.
Ins. Co., 100 S.W.3d 566, 569 (Tex. App.CHouston [14th Dist.] 2003, pet.
denied).








An
insurer=s duty to defend is determined under
the so-called Aeight-corners rule@ by examining the allegations in the pleadings and the
language of the insurance policy.  Nat=l Union Fire Ins. v. Merchs. Fast
Motor Lines, Inc.,
939 S.W.2d 139, 141 (Tex. 1997).  Because the question of an insurer=s duty to defend is a question of
law, we conduct our review under a de novo standard.  Huffhines v. State
Farm Lloyds, 167 S.W.3d 493, 496 (Tex. App.CHouston [14th Dist.] 2005, no pet.).  In deciding
whether appellees had a duty to defend in the present case, we must determine
(1) whether and under what circumstances the CGL policies cover damage caused
by defective construction, (2) whether the claims in the underlying lawsuits
are generally covered by the policies, (3) whether the claims in the underlying
lawsuits are excluded from coverage by the EIFS exclusion contained in certain
of the policies, and (4) whether the damage claimed in each lawsuit Atriggered@ coverage under
any of the policies.

A.  CGL
Policies and Defective Construction

We begin
by considering the language in the CGL policies.  In their motion, appellees
offered two compatible interpretations of the CGL policies: (1) the basic
insuring agreement contained in the policies does not provide coverage for the
types of events and the type of damages claimed by the plaintiffs in the
underlying lawsuits, and (2) certain exclusions in the policies exclude
coverage for these claims and damages.








The
issue of whether CGL policies cover claims for defective construction is
currently a contentious issue in Texas and nationally.[2] 
In Lennar Corp. v. Great American Insurance Co., we held, in considering
a fairly similar fact pattern, that CGL policies can cover these claims under
certain circumstances.  No. 14-02-00860-CV, 2006 WL 406609, at *12 (Tex. App.CHouston [14th Dist.] Feb. 23, 2006,
pet. filed).  As mentioned above, the insuring agreement in the CGL
policies provides coverage Aonly if: (1) the >bodily injury= or >property damage= is caused by an >occurrence= that takes place
in the >coverage territory= and (2) the >bodily injury= or >property damage= occurs during the
policy period.@  AOccurrence@ is defined in the
policies as Aan accident, including continuous or repeated exposure
to substantially the same general harmful conditions.@  In Lennar, we explained that
Texas courts have defined Aaccident,@ which is left undefined in the policies, as including
intentional acts that are negligently performed so long as the effect of the
acts would not have been the intended or expected result if performance had not
been negligent.  Id. at *4.  We then concluded that because the CGL
policies define Aoccurrence@ as Aan accident,@ negligent or inadvertent defective construction that results
in damage to the insured=s own work and the result of which is unintended and
unexpected can constitute an Aoccurrence@ as defined in the policies.  Id.

We
additionally explained that the CGL policies generally incorporate what is
known as the Abusiness risk doctrine@:  the principle that an insurance policy should not cover
defective construction that results in damage to the insured=s own work.  Id. at *7.  The
doctrine, however, is not incorporated in the basic insuring agreement or in
the definition of Aoccurrence@; neither of those contains any language eliminating coverage
for damage to the insured=s work.  Id.  Instead, the doctrine is manifested in
certain business risk exclusions, including the so-called Ayour work@ exclusion discussed above.  Id. 
Interpreting the insuring agreement or the term Aoccurrence@ so as to exclude a situation in
which an insured=s defective construction damaged its own work would render
the business risk exclusions, particularly the Ayour work@ exclusion, meaningless.  Id.
at *9.  This in turn would violate the well-established rule that we must read
all parts of an insurance policy together so that none is rendered superfluous
or meaningless.  Id. (citing cases including King v. Dallas Fire Ins.
Co., 85 S.W.3d 185, 192-93 (Tex. 2002)).








Furthermore,
we held that the exclusions do not eliminate coverage for some business risks. 
In Lennar, the CGL policies each contained a subcontractor exception to
the Ayour work@ business risk exclusion.  Id.
at *10.  Under the subcontractor exception, the Ayour work@ exclusion Adoes not apply if the damaged work or
the work out of which the damage arises was performed on [the insured=s] behalf by a subcontractor.@  The exception demonstrates that the
CGL policies were intended to cover defective construction resulting in damages
to the insured=s own work under certain circumstances.  Id. at *11.  To hold
otherwise would render the subcontractor exception meaningless.  Id.[3] 
In Lennar, the alleged defective construction in the underlying lawsuits
was performed by subcontractors.  Thus, we held that the CGL policies covered 
at least some of the alleged damages in the underlying lawsuits.  Id. at
*12 n.29.

Also, in
Lennar, we addressed the insurers= argument that several other
exclusions contained in the CGL policies operated to bar coverage for defective
construction.  Id. at *22-23, 27-29.  We found that none of the
exclusions in the standard CGL policies excluded such coverage.  Id.[4]








In
conclusion, because the standard CGL policies at issue in this case provide
coverage for property damage caused by defective construction performed by a
subcontractor, the trial court erred if it granted summary judgment based on
appellees= argument that the policies do not cover this type of damage.

B.
Sub-Contractors

In its
motion for summary judgment, Pine Oak contended that each of the underlying
lawsuits involved allegations of faulty construction performed by a
subcontractor or subcontractors on Pine Oak=s behalf.  Such facts would certainly
be a prerequisite to coverage under the CGL policies= subcontractor exception to the Ayour work@ exclusion.  In applying the eight‑corners
rule for analyzing a duty to defend, we must give the allegations in the
petitions a liberal interpretation.  Merchs. Fast Motor Lines, 939
S.W.2d at 141.  Generally, an insurer will be found to have a duty to defend if
the petition in question potentially states a cause of action within the policy
coverage.  Id.  A review of the petitions in the Sorrell, Fourrier,
Vint, and Barkley lawsuits reveals factual allegations that a subcontractor or
subcontractors performed faulty construction on the houses at issue.  Thus,
each of these lawsuits fits under the subcontractor exception.

The
petition in the Glass lawsuit is a different matter.  Nowhere in this petition
is the word Asubcontractor@ used, and nowhere in this petition are any facts alleged
upon which an inference could be based that subcontractors were used in the
construction of the Glass home.  Nonetheless, Pine Oak contends that (1) in the
absence of any affirmative or negative statement regarding subcontractors, the
doubt regarding subcontractor use should be resolved in favor of coverage, and
(2) extrinsic evidence established that subcontractors were used in the
construction of the Glass home.  We reject both contentions.








In its
first argument, Pine Oak is correct that in reviewing a petition under an
eight-corners analysis, we resolve any doubt regarding coverage in favor of the
insured.  See id.  However, this does not mean that we presume coverage
in the absence of any statement in the petition creating or disavowing
coverage.  To the contrary, if a pleading does not allege facts that would
create coverage under the policy, an insurer is not legally required to defend
the suit against its insured.  Id.  Stated conversely, when a pleading
only alleges facts excluded by the policy, the insurer has no duty to defend. 
Fid. & Guar. Ins. Underwriters, Inc. v. McManus, 633 S.W.2d 787, 788
(Tex. 1982); King Chapman & Broussard Consulting Group, Inc. v. Nat=l Union Fire Ins. Co., 171 S.W.3d 222, 228 (Tex. App.CHouston [1st Dist.] 2005, no pet.). 
Further, in reviewing the pleadings, we will not read facts into them or
imagine factual scenarios in order to find covered claims.  Merchs. Fast
Motor Lines, 939 S.W.2d at 142.  The Glass petition clearly states that all
of the alleged faulty construction was performed by Pine Oak.  It does not
raise the possibility that anyone else performed any of the faulty construction. 
Accordingly, we find that the claims in the Glass petition fall within the Ayour work@ exclusion of the CGL policies and do
not create any doubt regarding the subcontractor exception to the Ayour work@ exclusion.                     

In its
second argument, Pine Oak contends that it provided extrinsic evidence
establishing that subcontractors were, in fact, used in the construction of the
Glass home.  Pine Oak attached to its motion for summary judgment an affidavit
from Michael Harrison in which he avers that A[a]ll of the work performed on
Plaintiff=s [sic] house that is the subject of [the Glass lawsuit,] except
supervision, was performed by subcontractors.@  Pine Oak contends that such
extrinsic evidence may be used to establish a duty to defend under an insurance
policy.

The
eight-corners rule requires that we examine only the policy and the petition to
determine whether a duty to defend exists.  See id. at 141.  Texas
courts, however, have permitted limited exceptions to this rule.  The cases
fall into two categories: those permitting extrinsic evidence to establish only
fundamental coverage facts and those permitting extrinsic evidence whenever
that evidence does not contradict the pleadings.  Clearly, the first category
is much more narrow than the second category.








Regarding
the first category, many courts have stated that extrinsic evidence may be used
in duty-to-defend cases to establish fundamental coverage facts such as (1)
whether the person being sued is excluded as an insured under the policy, (2)
whether the property at issue in the lawsuit is excluded from coverage, and (3)
whether an insurance policy exists.  See, e.g., Providence Wash. Ins.
Co. v. A & A Coating, Inc., 30 S.W.3d 554, 556 (Tex. App.CTexarkana 2000, pet. denied); Tri‑Coastal
Contractors, Inc. v. Hartford Underwriters Ins., 981 S.W.2d 861, 863 n.1
(Tex. App.CHouston [1st Dist.] 1998, pet. denied); see also Westport Ins. Corp.
v. Atchley, Russell, Waldrop & Hlavinka, L.L.P., 267 F. Supp. 2d 601,
621 (E.D. Tex. 2003) (providing in-depth analysis of relevant caselaw).  Under
this line of cases, courts do not allow evidence of the specific alleged occurrence
in order to determine whether the occurrence itself is covered by the policy.  See
Westport Ins. Corp., 267 F. Supp. 2d at 620 (citing State Farm Fire
& Cas. Co. v. Wade, 827 S.W.2d 448, 454 (Tex. App.CCorpus Christi 1992, writ denied)
(Dorsey, J., concurring[5])).

Here,
Pine Oak offered extrinsic evidence that the faulty construction work was
performed by subcontractors and, thus, was potentially covered under the CGL
policies.  Because this evidence speaks to the specific alleged occurrence, it
does not fall within the parameters of this first category of extrinsic
evidence cases.








The
second category of extrinsic evidence consideration is found in only a few
cases.  These cases hold that a court may examine extrinsic evidence A[w]hen the petition in the underlying
lawsuit does not allege facts sufficient for a determination of whether those
facts, even if true, are covered by the policy.@  Wade, 827 S.W.2d at 452
(citing Gonzales v. Am. States Ins. Co., 628 S.W.2d 184, 186 (Tex. App.CCorpus Christi 1982, no writ));
see also Urethane Int=l Prods. v. Mid-Continent Cas. Co., 187 S.W.3d 172, 176 (Tex. App.CWaco 2006, no pet.) (citing Wade
and Gonzales).  Although the Texas Supreme Court has not specifically
addressed the propriety of this much more permissive rule, it is clearly the
minority position and has been strongly criticized.  See, e.g., Northfield
Ins. Co. v. Loving Home Care, Inc., 363 F.3d 523, 529B31 (5th Cir. 2004) (making Abest Erie guess@ that current Texas Supreme Court
would not recognize any exception to the strict eight-corners rule); Westport
Ins. Corp., 267 F. Supp. 2d at 616B622 (concluding that the permissive
extrinsic evidence rule is in the minority and increasingly disfavored).

We
recognize that the refusal to consider extrinsic evidence will inevitably
result in some inequitable outcomes.[6]  Nonetheless,
two factors stand at the forefront of our decision and trump any equitable
considerations:  (1) the Texas Supreme Court has only  applied the
eight-corners analysis in duty to defend cases and has resisted all
opportunities to adopt a permissive extrinsic evidence stance in such cases,
and (2) the clear majority of courts of appeals that have addressed the issue,
including most of the recent opinions, have rejected the permissive rule. 
Because there is a clear trend in Texas law, we decline to follow the
permissive rule and instead follow the eight-corners analysis as set forth by
the Texas Supreme Court.  See generally Merchs. Fast Motor Lines, 939
S.W.2d at 141B42.

Because
Pine Oak=s extrinsic evidence does not fall
within the first category of cases permitting extrinsic evidence and we decline
to follow the more permissive line of cases, we will not consider the extrinsic
evidence in analyzing the claims in the Glass lawsuit.  As stated above, the
Glass pleadings do not establish that appellees had a duty to defend Pine Oak
in that lawsuit.  Thus, the trial court correctly held that appellees were not
obligated to provide a defense in the Glass lawsuit.

C.  Policy
Trigger








We next
consider whether each of the petitions allege damage triggering any of the CGL
policies issued by appellees.  In response to Pine Oak=s motion for summary judgment,
appellees argued that Pine Oak had failed to identify which policies were
triggered in regard to each underlying lawsuit.  In other words, they argued
that Pine Oak had not established the date of the Aoccurrence@ in each lawsuit that would trigger
coverage under a particular policy.  On appeal, they cite Dorchester
Development Corp. v. Safeco Insurance Co., 737 S.W.2d 380 (Tex. App.CDallas 1987, no writ), for the proposition
that the time of an occurrence for purposes of triggering a liability policy is
the time the complaining party was actually damaged, not the time the wrongful
act was committed.  They further assert that under the Dorchester Amanifestation rule,@ a party sustains actual damage when
the damage becomes Areadily apparent@ or Amanifest,@ citing American Home Assurance
Co. v. Unitramp Ltd., 146 F.3d 311, 313 (5th Cir. 1998).  According to the Unitramp
opinion, damage becomes Areadily apparent@ or Amanifest@ when it Ais capable of being easily perceived,
recognized and understood.@  146 F.3d at 314.

Appellees
then assert that Texas courts have consistently adopted the manifestation rule
to determine the time of an occurrence.  We disagree.  Only two courts have
adopted the manifestation rule, and the Texas Supreme Court has so far declined
to adopt or reject the rule.  See Am. Physicians Ins. Exch. v. Garcia,
876 S.W.2d 842, 853 n.20 (Tex. 1994); State Farm Mut. Auto Ins. Co. v. Kelly,
945 S.W.2d 905, 910 (Tex. App.CAustin 1997, writ denied); Cullen/Frost Bank v.
Commonwealth Lloyd=s Ins. Co., 852 S.W.2d 252, 257 (Tex. App.CDallas 1987, writ denied); Dorchester
Dev., 737 S.W.2d at 383.  In Unitramp, the Fifth Circuit noted that
the Texas Supreme Court had not adopted the manifestation rule, but certain
lower courts (citing Kelly, Cullen/Frost, and Dorchester)
had applied it.  146 F.3d at 313.  Without further analysis into the propriety
of the rule, the Unitramp court also applied it.  146 F.3d at 313B14.








We
hasten to note, however, that none of these cases appears to have involved
policies that defined Aoccurrence@ so as to include Acontinuous or repeated exposure to
conditions.@  The CGL policies currently before us do so, as did the policies at
issue in Pilgrim Enterprises, Inc. v. Maryland Casualty Co., 24 S.W.3d
488, 496 (Tex. App.CHouston [1st Dist.] 2000, no pet.).  In Pilgrim, our
sister court declined to follow the Dorchester manifestation rule and
instead followed what is called the Aexposure rule.@  Id. at 497-98; see also
Millennium Petrochem., Inc. v. Brown & Root Holdings, Inc., 390 F.3d
336, 343B44 (5th Cir. 2004) (citing Pilgrim
favorably).

The Pilgrim
court explained that A[i]n an occurrence based policy, the insured is covered for >all claims based on an event
occurring during the policy period, regardless of whether the claim or
occurrence is brought to the attention of the insured or made known to the
insurer during the policy period.=@ Id. at 497 (quoting Yancey
v. Floyd West & Co., 755 S.W.2d 914, 918 (Tex. App.CFort Worth 1988, writ denied)).  In
contrast, claims‑made policies, which are less expensive than occurrence-based
policies, cover only injuries or damages that come to the attention of the
insured and are made known to the insurer during the policy period.  Id.
(citing Yancey).  Because the policies at issue in Pilgrim were
occurrence-based policies, reading a claims-made requirement into the policiesCthat the damage must actually be
discovered during the policy period for coverage to be triggeredCwould significantly lower the value
purchased by the insured.  Id.

More
importantly, the court emphasized that the policies in question neither
contained the term Amanifest@ nor required that damage must be identified during the
coverage period; to the contrary, the policies contemplated that damage could
result from Acontinuous or repeated exposure to conditions.@  Id.  Thus, Aharm caused by continuous exposure
during a policy period will be covered by that policy.@  Id.

Similarly,
all of the CGL policies issued by appellees to Pine Oak omit reference to Amanifestation@ but contain Acontinuous or repeated exposure@ language.  Therefore, any property
damage that occurred because of continuous or repeated exposure to conditions
during the policy period of a policy issued by Great American or Mid-Continent
is potentially covered.  Accordingly, each insurer would have a duty to defend
against any claim that alleges potential property damage from a continuous or
repeated exposure falling within a relevant policy period.[7]








In
reviewing the claims in each petition, we must liberally interpret the allegations,
finding a duty to defend whenever a petition potentially states a cause of
action within the policy coverage.  Merchs. Fast Motor Lines, 939 S.W.2d
at 141; see also  Pilgrim Enters., 24 S.W.3d at 498.  We further
bear in mind that the Great American policies covered the period from April 5,
1993, to April 5, 2001, whereas the Mid-Continent policies covered from April
5, 2001, to April 5, 2003.

In the
Sorrell lawsuit, the plaintiffs alleged that Pine Oak built the home in 1996 or
1997 and the plaintiffs purchased it in 1999, that each new rainfall has caused
new, independent damage, and that the accumulation of moisture has continuously
caused damage.  In the Fourrier lawsuit, the plaintiffs alleged that Pine Oak
built the home in 1997, that each new rainfall has caused new, independent
damage, and that the accumulation of moisture has continuously caused damage. 
In the Vint lawsuit, the plaintiffs alleged that Pine Oak built the home in
1997 and the plaintiffs bought it in 2000, that each new rainfall has caused
new, independent damage, and that the accumulation of moisture has continuously
caused damage.  Thus, each of these three lawsuits clearly states a cause of
action potentially within the coverage of both Great American and Mid-Continent
policies.








In the
Barkley lawsuit, the plaintiff alleged that Pine Oak built the home in 1996 and
that the EIFS failed and caused damage by permitting water infiltration and
entrapment.  The petition also states a number of other allegations, including
that Pine Oak failed to properly install sprinkler heads and flashing and
failed to provide adequate drainage, ventilation, and caulking.  The appellees
point out, however, that the petition does not state a specific time period in
which the EIFS failed or when any of the alleged defects caused damages; the
petition also does not allege that damage occurred with each new rainfall or
that the accumulation of moisture continuously caused damage.  We will not read
facts into a petition to create a duty to defend.  See King v. Dallas Fire
Ins. Co., 85 S.W.3d 185, 187 (Tex. 2002).  If the policy itself does not
contain sufficient facts to establish that the policy has been triggered, there
is no duty to defend.  Id.  While the appellees are correct that the
Barkley petition does not allege a specific date on which damage occurred, it
can readily be ascertained from the petition that the alleged damage occurred
in 1996 (the year of construction) or later.  See Westfield Ins. Co. v.
Kroiss, 694 N.W.2d 102, 106-07 (Minn. Ct. App. 2005) (holding that where
plaintiffs in underlying petitions did not allege specific time periods in
which water infiltrated their homes and caused damage, the petitions still
alleged damage that potentially occurred during the policy periods). 
Accordingly, the petition states a cause of action potentially within the
coverage of each of the post-1995 Great American policies as well as the two
Mid-Continent policies.  See Merchs. Fast Motor Lines, 939 S.W.2d at
141; Pilgrim Enters., 24 S.W.3d at 498.

In
conclusion, we find that the pleadings in Sorrell, Fourrier, Vint, and Barkley
allege damages occurring in policy periods covered by both Great American and
Mid-Continent.  Thus the trial court erred if it granted summary judgment on
the ground that the duty to defend provisions in the policies were not
triggered by the claims in these underlying lawsuits.[8]

D.  EIFS
Exclusion








In their
motion for summary judgment, appellees additionally argued that specific
exclusions in certain of the CGL policies for property damage arising out of
the EIFS Ahazard@ preclude coverage of the damages in the underlying cases.  These
policies include the Great American policy effective beginning in April 2000
and the Mid-Continent policies effective beginning in April 2001 and April 2002
(the only two years Mid-Continent insured Pine Oak).  Pine Oak does not dispute
that the Mid-Continent endorsements were valid but does dispute whether the
Great American endorsement was valid.  Pine Oak additionally argues that
regardless of the validity of the EIFS endorsements, it is still entitled to
coverage from both appellees because the underlying lawsuits allege damage
unrelated to EIFS.[9]

1. 
Validity of the Great American Endorsement

Pine Oak
asserts that Great American=s EIFS endorsement is invalid because Great American failed
to obtain preapproval of the exclusion from the Texas Commissioner of
Insurance, as required by Insurance Code article 5.13-2.  Tex. Ins. Code Ann. art. 5.13-2, ' 8 (Vernon Supp. 2005).  A form used
without such approval is void.  Commercial Union Assurance Co. v. Preston,
282 S.W. 563, 565 (Tex. 1926); see also Urrutia v. Decker, 992 S.W.2d
440, 443-44 (Tex. 1999) (discussing Commercial Union).  Appellees argue
that Great American=s EIFS exclusion was entered on an approved form because the
commissioner approved a form that permitted exclusion of ADesignated Work@ from coverage and contained a blank
for the ADescription of your work.@[10]  In the blank on the form included
in the Great American CGL policies, it is written ASee CG8802.@  The next page of each of the
policies is a document marked as ACG 88 02 (Ed. 11 85).@  This document contains
substantially similar language to that contained in the Mid-Continent EIFS
exclusion.








We agree
with appellees.  The commissioner approved the ADesignated Work@ form, which contained a blank for
filling in the work that was to be excluded from coverage.  The Great American
CGL policies have this blank completed by reference to an attached document. 
That document details the EIFS-related work that was to be excluded from
coverage.  Because the commissioner approved the form with a blank for
designated work, it follows that he approved the use of such a form. 
Furthermore, the approved version of the ADesignated Work@ form states in parentheses after the
blank for ADescription of your work@ that A[i]f no entry appears above, information required to complete
this endorsement will be shown in the Declarations as applicable to this
endorsement.@  Thus, the form itself authorizes the description of the work to be
excluded to be on a separate page.  As long as the item entered, or referenced,
in the blank constitutes Adesignated work@ and not something else, the
exclusion is valid.  The document referenced in the ADesignated Work@ endorsements, ACG 88 02 (Ed. 11 85),@ is headed Adescription of your work@ and contains a description of work
conducted in regard to EIFS, including Adesign, manufacture, construction,
fabrication, preparation, installation, application, maintenance or repair . .
. of an Exterior Insulation and Finish System.@  Accordingly, the trial court did
not err if it found that the Great American exclusion was valid so as to
exclude coverage for EIFS-related claims.

2. 
Non-EIFS Related Damage

Regarding
Mid-Continent, the EIFS exclusion would bar coverage of any underlying claims
relating to EIFS.  Regarding Great American, its CGL policies only included
EIFS exclusions in the final two years of coverage, 1999-2001; thus, these
exclusions would only bar damages occurring after April 1999.  To the extent
any of the underlying lawsuits include claims unrelated to EIFS for damages
occurring during relevant policy years, the insurers could still be required to
provide a defense in those actions.  See Merchs. Fast Motor Lines, 939
S.W.2d at 141 (stating that an insurer will generally be required to defend a
lawsuit if the underlying petition potentially states a cause of action within
the policy coverage).  Thus, we must undertake a case-by-case, pleading-by-pleading
analysis to determine if any non-EIFS claims are raised.

The
Mid-Continent EIFS exclusion reads as follows:

Unless so
indicated below, the AExterior Insulation and Finish System Hazard@ is included within the Limit of Insurance.








___     A.        If so indicated, the AExterior Insulation and Finish System Hazard@ is limited to:

$                                  Aggregate

$                                  Deductible Per Claim

  X       B.        If
so indicated, this insurance does not apply to AProperty Damage@ arising out of the AExterior Insulation and Finish System Hazard.@

Definition

1.                 
AExterior
Insulation and Finish System Hazard@
means the design, manufacture, construction, fabrication, preparation,
installation, application, maintenance, or
repair, including remodeling, service, correction, or replacement, of an Aexterior insulation and finish system@ (commonly referred to as synthetic stucco) or any
part thereof, or any substantially similar system or any part thereof,
including the application or use of conditioners, primers, accessories,
flashings, coatings, caulkings or sealants in connection with such a system
when performed by you or;

Any work or operations with respect to any exterior
component, fixture or feature of any structure if an Aexterior insulation and finish system
hazard@ is used on any part of that
structure when performed by you or on your behalf.

As
discussed above, the Great American EIFS exclusion was contained in a general Ayour work@ exclusion.  The attached description
of Ayour work@ reads as follows:

Description
of your work:

1.                 
The design, manufacture, construction, fabrication, preparation,
installation, application, maintenance or repair, including remodeling service,
correction, or replacement, of an AExterior
Insulation and Finish System@
(commonly referred to as synthetic stucco) or
any part thereof, or any substantially similar system or any part thereof, including
the application or use of conditioners, primers, accessories, flashings,
coatings, caulkings or sealants in connection with such a system.

2.                 
Any work or operations with respect to any exterior component,
fixture or feature of any structure if an AExterior
Insulation and Finish System@ is used on any part of that structure.








This
exclusion applies to Ayour work@
described in paragraph 1 or paragraph 2 above performed  by you or on your
behalf.

. . . .

This insurance does not apply to Abodily injury@ and Aproperty damage@ included in the Aproducts-completed operations hazard@ and arising out of Ayour work@ shown in the schedule.

The EIFS exclusions
contained in the policies broadly exclude coverage for property damage directly
related to EIFS.  Each also excludes coverage for damage resulting from work
performed on any Aexterior component, fixture, or feature@ of a structure if EIFS is installed
on any part of that structure.[11]

In
regard to the Sorrells= claims, Pine Oak points only to the following language from
the pleadings as constituting a claim of non-EIFS-related damage: ADefendant Pine Oak failed to properly
construct the Residence in a manner that would protect it from damage.@  Out of context, this sentence
appears ambiguous enough to include non-EIFS damage.  However, viewed in
context, it is clear that the statement refers to the application and
installation of EIFS on the Sorrells= home.  The remainder of the Sorrells= petition, as it relates to Pine Oak,
alleges only damages and conduct relating to EIFS and does not make any claims
against Pine Oak unrelated to the use and installation of EIFS on the home. 
Accordingly, the EIFS exclusion in the CGL policies bars coverage of any claims
based on the Sorrell lawsuit during relevant policy periods.








In their
pleadings, the Fourriers primarily raise EIFS-related causes of action and
damages; however, they also claim that an inadequately-sized chimney cap was
installed, insufficient grade clearance was created at the base of certain
columns on the house, and no expansion joint was installed on the second level
floor line.  The first of these complaints, the chimney cap, clearly falls
within the Aexterior component, fixture, or feature@ portion of the EIFS exclusions,
assuming it is not part of the EIFS itself.  The other two complaints,
regarding the grade clearance and expansion joint, do not appear to be covered
by any portion of the EIFS exclusion.  However, the Fourriers do not allege
that any property damage resulted from these two problems.  A CGL policy covers
only property damage to tangible property and not the cost to repair, replace,
or remediate the defective construction itself.  Lennar, 2006 WL 406609,
at *15.  In the damages section of the petition, the Fourriers claim only
EIFS-related property damages.  Although they additionally request Adamages@ for and remediation of the grade
clearance problem and the missing expansion joint, such is not compensable
under the CGL policies.  See id.  Accordingly, we find that the
Fourriers= claims are excluded by the EIFS exclusions when those exclusions were in
effect.

The only
non-EIFS related problem identified by Pine Oak in the Vint lawsuit is the
claim that the roof is sagging due to improper roof installation, including
specifically the installation of collar ties and struts.  The roof itself
clearly falls within the Aexterior component, fixture, or feature@ portion of the EIFS exclusions. 
Further, the collar ties and struts are but components of the roof itself;
thus, each also falls within the Aexterior component, fixture, or
feature@ portion of the EIFS exclusions.  See
generally 22 Tex. Admin. Code
'535.228 (Tex. Real Estate Comm=n, Standards of Practice) (describing
collar ties and struts as roof components).  More to the point, work performed
on a roof component would constitute work or operations with respect to an Aexterior component, fixture or feature.@  Accordingly, we find that the Vints= claims are excluded by the EIFS
exclusions for the policies in which such exclusions occur.








The only
non-EIFS related problems identified by Pine Oak in the Barkley case involve a
failure to properly caulk windows, provide adequate crawl space, and properly
install sprinkler heads.  Like the claims in the Fourrier lawsuit, however,
none of the non-EIFS Barkley allegations assert property damage covered by the
CGL policies.  Each is a construction defect in itself; there is no claim that
these items caused other damage.  It could be surmised that a failure to
properly caulk windows may have contributed to the water infiltration problems
alleged by Barkley, but this allegation is also clearly covered by the Aexterior component, fixture, or
feature@ portion of the EIFS exclusions.  The
other itemsCinadequate crawl space and sprinkler head installationCare not tied to any resulting
property damage in the petition.  Accordingly, they are not covered by the CGL
policies.  See Lennar, 2006 WL 406609, at *15.[12]

In
conclusion, we find that none of the pleadings in Sorrell, Fourrier, Vint, and
Barkley allege damages not excluded from coverage by the EIFS exclusions. 
Accordingly, as a matter of law, Mid-Continent does not have a duty to defend
in any of these lawsuits.  Great American, however, still has a duty to defend
because the damages alleged in those cases triggered policies in force prior to
the addition of the EIFS exclusion.[13]  Based on
the foregoing analysis, we sustain in part and overrule in part each of Pine
Oak=s first three issues.

III. 
Insurance Code Article 21.55

In its
fourth issue, Pine Oak contends that the trial court erred in granting summary
judgment favoring appellees on Pine Oak=s claims under former article 21.55
of the Texas Insurance Code.  Tex. Ins.
Code Ann. art. 21.55 (repealed 2005) (current version at Tex. Ins. Code Ann. ' 542.051-.061 (Vernon Supp. 2005)). 
Pine Oak pleaded that it was entitled to damages under the article for
appellees= failure to promptly provide a defense or pay defense costs in the
underlying lawsuits.  In their motion for summary judgment, appellees argued
that they cannot be found liable under article 21.55 because it does not apply
to the payment of attorney=s fees under a duty to defend.








Article
21.55 imposes certain requirements on an insurer to respond to claims and to
promptly pay accepted claims; it also imposes penalties for non-compliance.  Tex. Ins. Code Ann. art. 21.55, '' 2B4, 6.  The article defines Aclaim@ as Aa first party claim made by an
insured or a policyholder under an insurance policy . . . that must be paid by
the insurer directly to the insured.@  Id. ' 1(3).  The question of whether
defense costs under an insurer=s duty to defend constitute a Afirst party claim@ covered by article 21.55 or Athird party claims@ not covered by article 21.55 has
caused significant recent disagreement among Texas courts.  Several courts of
appeals have held that an insured=s claim for defense costs was not a
first party claim under the policy in question but was a breach of contract
claim for failing to provide a defense; thus, the claim did not trigger
penalties under 21.55, which applies only to claims under the policy.  See
Ulico Cas. Co. v. Allied Pilots Ass=n, 187 S.W.3d 91, 104-08 (Tex. App.CFort Worth 2005, pet. filed); Serv.
Lloyd=s Ins. Co. v. J.C. Wink, Inc., 182 S.W.3d 19, 30-33 (Tex. App.CSan Antonio 2005, pet. filed); TIG
Ins. Co. v. Dallas Basketball, Ltd., 129 S.W.3d 232, 239-40 (Tex. App.CDallas 2004, pet. denied).








On the
other hand, the federal district courts in Texas have been unanimous in holding
that a failure to promptly pay defense costs can trigger article 21.55
penalties.  See, e.g., Westport Ins. Corp. v. Atchley, Russell,
Waldrop & Hlavinka, L.L.P., 267 F. Supp. 2d 601, 632 n.19 (E.D. Tex.
2003); Luxury Living, Inc. v. Mid‑Continent Cas. Co., No. Civ. A.
H‑02‑3166, 2003 WL 22116202, at *20 (S.D. Tex. Sept. 10, 2003) (not
designated for publication); E & R Rubalcava Constr., Inc. v. Burlington
Ins. Co., 148 F. Supp. 2d 746, 750 (N.D. Tex. 2001); Ryland Group, Inc.
v. Travelers Indem. Co., No. Civ. A‑00‑CA‑233 JRN, 2000
WL 33544086, at *11‑12 (W.D. Tex. 2000) (not designated for
publication).  The Corpus Christi Court of Appeals affirmed an award of article
21.55 damages to an insured for the insurer=s failure to promptly provide a
defense or pay defense costs, but it did so without addressing whether they were
first or third party claims.  N. County Mut. Ins. Co. v. Davalos, 84
S.W.3d 314, 318-19 (Tex. App.CCorpus Christi 2002), rev=d on other grounds, 140 S.W.3d 685 (Tex. 2004) (holding
that the insurer did not fail to timely provide a defense and thus declining to
decide whether an insurer=s failure to promptly pay defense costs could entitle an
insured to article 21.55 penalties).[14]

We agree
with our sister courts who have held that a demand for a defense under a
liability policy is not a first party claim under such policy.  As the court in
TIG explained, the structure of article 21.55 presumes a tangible loss
has been suffered by the insured for which it seeks payment from its insurer. 
129 S.W.3d at 239B40.  Attempting to apply the statute to a claim for a defense
is unworkable and goes against the legislative intent.  Id. at 239. 
When an insurer refuses to provide a defense, the insured=s claim for reimbursement is not a
claim under the insurance policy but is a common law claim for breach of the
policy; thus, article 21.55 does not apply.  Id. at 239B40.  Based on the analysis in TIG,
we conclude that article 21.55 is inapplicable to Pine Oak=s claim that appellees failed to
promptly provide for a defense or pay defense costs.  Accordingly, Pine Oak is
not entitled to damages, attorney=s fees, or penalties under article
21.55.  We overrule Pine Oak=s fourth issue.

IV. 
Indemnification Claims

In its
fifth issue, Pine Oak contends that the trial court erred in granting summary
judgment on appellees= duty to indemnify Pine Oak in the underlying lawsuits.  In
their motion for summary judgment, appellees argued that they have no duty to
indemnify Pine Oak for the same reasons they have no duty to defend.  Pine Oak
responded that appellees= duty to indemnify is not justiciable until after resolution
of the liability issues in the underlying lawsuits.








We begin
by acknowledging that the duty to defend and the duty to indemnify are separate
and distinct duties that an insurer owes to its insured.  Trinity Universal
Ins. Co. v. Cowan, 945 S.W.2d 819, 821-22 (Tex. 1997).  As discussed in
detail above, the duty to defend is determined from a review of the policy and
the factual allegations in the underlying pleadings.  See id. at 821. 
Conversely, the duty to indemnify depends on whether the actual facts in the
case establish liability covered under the policy.  Id.  Thus,
generally, the duty to defend can be determined prior to resolution of the
underlying lawsuit, while the duty to indemnify may not be justiciable until
the question of the insured=s liability has been resolved.  See Farmers Tex. County
Mut. Ins. Co. v. Griffin, 955 S.W.2d 81, 82-83 (Tex. 1997).  For example, a
pleading alleging that the insured engaged in both negligent and intentional
conduct might trigger an insurer=s duty to defend under a particular
policy, whereas an ultimate finding that the insured acted only intentionally
might negate any duty to indemnify.  Id. at 82.  In contrast, a duty to
indemnify may be determinable prior to resolution of the underlying liability
issues when the same reasons that negate a duty to defend would likewise negate
any possibility that the insurer would ever have a duty to indemnify in the
underlying cases.  Id. at 84.

The
insurance policy at issue in Griffin covered negligent acts of the
insured that resulted in an Aauto accident,@ but expressly excluded coverage for
intentional acts.  Id. at 82.  Although the plaintiff in the underlying
lawsuit pleaded legal theories of negligence and gross negligence, he alleged
facts (i.e., a drive-by shooting) indicating that the origin of his
damages was solely intentional behavior.  Id. at 82-83.  The supreme
court concluded that because no facts possibly could be developed at trial that
would convert a drive-by shooting into an auto accident, the insurer could
never be required to indemnify the insured regarding the underlying lawsuit.  Id.
at 84.  Accordingly, the court rendered a declaratory judgment for the insurer
on the indemnification issue.








We held
above that Mid-Continent had no duty to defend in the Sorrell, Fourrier, Vint,
and Barkley lawsuits because none of the pleadings in those cases alleged any
non-EIFS related damages; thus, the EIFS exclusion in the Mid-Continent CGL
policies barred coverage of the alleged facts.  As in Griffin, the same
reasons that negate Mid-Continent=s duty to defend in the underlying
lawsuits likewise negate any possibility that it would ever have a duty to
indemnify in the lawsuits.  The plaintiffs in the underlying cases allege only
damages caused by EIFS-related problems, and the EIFS exclusions negate
coverage for these claims.  Consequently, the trial court did not err in
holding that Mid-Continent had no duty to indemnify Pine Oak in these lawsuits.

Regarding
Great American and the Sorrell, Fourrier, Vint, and Barkley lawsuits, we held
above that Great American had a duty to defend in those cases because damage
allegedly occurred during policy periods in which no EIFS exclusion was in
force.  Consequently, the Griffin rule cannot apply in regard to Great
American=s duty to indemnify in those
lawsuits.  Thus, the trial court erred in holding that Great American had no
duty to indemnify in those lawsuits.

Regarding
the Glass lawsuit, we held above that neither Mid-Continent nor Great American
had a duty to defend because the Glass pleadings did not raise the possibility
that subcontractors were used in constructing the home.  We recently noted that
Aif the underlying petition does not
raise factual allegations sufficient to invoke the duty to defend, then even
proof of all of those allegations could not invoke the insurer=s duty to indemnify.@  D.R. Horton-Tex., Ltd. v. Markel
Int=l Ins. Co., No.14-05-00486-CV, 2006 WL ______, at *__ (Tex. App.CHouston [14th Dist.] June 29, 2006,
no pet. h.) (mem. op.) (citing Reser v. State Farm Fire & Cas. Co.,
981 S.W.2d 260, 263 (Tex. App.CSan Antonio 1998, no pet.)).  In D.R.
Horton, we went on to hold that because the pleadings in the underlying
lawsuit did not allege facts covered by the policy, proof of those facts would
not trigger coverage.  Accordingly, we hold that because the pleadings in the
underlying Glass lawsuit do not allege facts covered by the Mid-Continent or
Great American policies, there can be no duty to indemnify in the Glass
lawsuit.  The trial court therefore did not err in holding as a matter of law
that Mid-Continent and Great American had no duty to indemnify Pine Oak in the
Glass lawsuit.








The
trial court correctly held that Mid-Continent had no duty to indemnify Pine Oak
in any of the underlying lawsuits and that Great American had no duty to
indemnify Pine Oak in the Glass lawsuit.  The court erred, however, in holding
that Great American had no duty to indemnify in the Sorrell, Fourrier, Vint,
and Barkley lawsuits.  Accordingly, we sustain Pine Oak=s fifth issue in part and overrule it
in part.

V.  Pine
Oak=s Damages

Pine Oak
has also asserted, in its appellate brief and in the trial court, that it
should be awarded the attorney=s fees that it has already expended in defending the
underlying litigations as well as the additional fees that it expects to incur
in the future in defending the litigations.  Pine Oak has offered no authority
for this request in either the trial court or on appeal.  Generally, in the
declaratory judgment context, when a court determines that an insurer has a
duty to defend in an underlying litigation, the court issues a declaratory
judgment so stating.  See English v. BGP Int=l, Inc., 174 S.W.3d 366, 375 (Tex. App.CHouston [14th Dist.] 2005, no pet.);
Serv. Lloyd=s Ins. Co. v. J.C. Wink, Inc., 182 S.W.3d 19, 33 (Tex. App.CSan Antonio 2005, pet. filed);
Tucker v. Allstate Tex. Lloyds Ins. Co., 180 S.W.3d 880, 889 (Tex. App.CTexarkana 2005, no pet.); Fielder
Road Baptist Church v. Guideone Elite Ins. Co., 139 S.W.3d 384, 391 (Tex.
App.CFort Worth 2004, pet. granted).  We
have found no authority supporting a prospective award of attorney=s fees in such a situation.  Pine Oak
offers no authority or argument to suggest otherwise.

VI. 
Disposition

We hold that as a
matter of law, Mid-Continent does not have a duty to defend Pine Oak in any of
the underlying lawsuits: Sorrell, Fourrier, Glass, Vint, or Barkley.  Further,
as a matter of law, Great American does not have a duty to defend in the Glass
lawsuit.  Accordingly, we affirm the trial court=s summary judgment
in regard to Mid-Continent=s duty to defend in each of the underlying
litigations, and we affirm the summary judgment in regard to Great American=s duty to defend
in the Glass lawsuit.








We additionally
hold that Great American has a duty to defend in the Sorrell, Fourrier, Vint,
and Barkley lawsuits.  Thus, the trial court erred in rendering judgment that
Great American did not have a duty as a matter of law to defend in these
lawsuits, and we reverse the court=s judgment in this
regard.  Based on these holdings, we sustain in part and overrule in part each
of Pine Oak=s first three issues.

We further hold that Pine Oak is not
entitled to recover under former article 21.55 of the Insurance Code; thus, the
trial court did not err in granting summary judgment against these claims. 
Accordingly, we overrule Pine Oak=s fourth issue.

We further hold that the trial court
correctly held that Mid-Continent has no duty to indemnify Pine Oak in any of
the underlying lawsuits and that Great American has no duty to indemnify Pine
Oak in the Glass lawsuit; thus, we overrule Pine Oak=s fifth issue in part and affirm
summary judgment in this regard.  However, the trial court erred in holding
that Great American has no duty to indemnify in the Sorrell, Fourrier, Vint,
and Barkley lawsuits, so we sustain Pine Oak=s fifth issue in part and reverse the
court=s judgment in this regard.

In summary, we
affirm the trial court=s summary judgment on all of Pine Oak=s claims against
Mid-Continent.  We also affirm the trial court=s summary judgment
on all of Pine Oak=s claims against Great American relating
to the Glass lawsuit and on Pine Oak=s article 21.55
claims against Great American.  We reverse the summary judgment on the
remaining claims discussed in this opinionCthose alleging
that Great American has a duty to defend and a duty to indemnify in the Sorrell, Fourrier, Vint, and Barkley
lawsuits.  Accordingly, we sever these claims and remand for further proceedings
in accordance with this opinion.[15]

 

 

 

 

/s/      Adele Hedges

Chief Justice

 

Judgment rendered
and Opinion filed July 6, 2006.

Panel consists of
Chief Justice Hedges and Justices Yates and Guzman.









[1]  Although Pine Oak did not characterize it as such,
its lawsuit is effectively a declaratory judgment action because it requests a
declaration of rights regarding the duty to defend and the duty to indemnify
under the CGL policies.  Appellees filed a counterclaim that is correctly
characterized as a declaratory judgment action.





[2]  The Texas Supreme Court has granted the petition for
review filed in Employers Mutual Casualty Co. v. Gehan Homes, 146 S.W.3d
833 (Tex. App.CDallas 2004, pet. granted).  The  Fifth Circuit has
filed certified questions with the Texas Supreme Court in Lamar Homes, Inc.
v. Mid-Continent Casualty Co., 428 F.3d 193 (5th Cir. 2005).  Both cases
involve issues substantially similar to many of the issues raised in the case
before us.

 





[3]  Appellees offer a scenario involving a subcontractor
welding on one construction site and accidentally setting fire to an adjoining
former construction site to suggest that the exclusion would not be rendered
meaningless by finding that an event that causes damage only to the insured=s own work could not be an Aoccurrence.@ 
However, the point of Lennar is that (1) the basic CGL insuring
agreement does not bar defective construction claims, (2) the business risk
exclusions do generally bar such claims, and (3) the subcontractor exception
restores coverage for such claims when they involve the work of a subcontractor. 
See 2006 WL 406609, at *12. The appellees= unlikely scenario, to which the subcontractor exception could also
apply, does not alter the Lennar analysis.





[4]  On appeal in this case, appellees assert that
exclusion An@ applies so as
to bar coverage of the claims in the underlying lawsuits irrespective of our
holding in Lennar.  Exclusion An@ is the so-called Asistership@ exclusion, and it generally precludes coverage for

 

Damages claimed for any loss, cost or expense incurred
by you or others for the loss of use, withdrawal, recall, inspection, repair,
replacement, adjustment, removal or disposal of:

(1) Ayour product@;

(2) Ayour work@; or

(3) Aimpaired
property@;

if such product, work, or property is withdrawn or
recalled from the market or from use by any person or organization because of a
known or suspected defect, deficiency, inadequacy or dangerous condition in it.

 

In Lennar, we held under similar facts that
while this exclusion might apply to the replacement of EIFS as a preventative
measure (which the insured did in that case), it clearly did not exclude costs
to repair water damage to the homes.  2006 WL 406609, at *23.  Since the claims
in the underlying lawsuits, in both Lennar and the present case, alleged
water damage in addition to or instead of EIFS repair, replacement, or removal
costs, the trial court erred if it granted summary judgment based on
application of exclusion An.@  See id.





[5]  Although the Aconcurring
opinion@ in Wade is styled as a concurrence, it was
joined by two of the three judges on the panel.  827 S.W.2d at 449, 453-55
(Dorsey, J., concurring; Hinojosa, J., joining).





[6]  It is interesting to note that in most of the cited
cases, the extrinsic evidence in question was offered by an insurer to prove
that it had no duty to defend.  Situations like the present, where an insured
is offering extrinsic evidence that would establish a duty to defend, will
naturally be less common because plaintiffs in underlying litigations generally
have an incentive to allege facts within coverage of the defendant=s insurance policy (to bring deep-pockets into the
litigation).  We decline to fashion a new principle of law based on which party
offers the evidence.





[7]  The proper inquiry is when the property damage
occurred, not when the defective construction occurred.  The CGL policies cover
property damage occurring during the policy period; they do not cover the cost
to repair, replace, or remediate the defective construction itself.  See
Lennar, 2006 WL 406609, at *15.





[8]  We do not address the trigger issue with respect to
the Glass lawsuit because we held above that the appellees had no duty to
defend in Glass because the Glass pleadings did not raise claims falling within
the subcontractor exception to the Ayour
work@ exclusion.





[9]  It is important to note that Pine Oak does not argue
that the EIFS exclusion would not exclude coverage if valid and if a particular
lawsuit does not allege damages other than from EIFS.  Accordingly, we assume,
in support of the trial court=s judgment,
that a valid EIFS exclusion bars coverage of any underlying lawsuit that raises
only EIFS-related claims.





[10]  In support of its contention that the Adesignated work@
form was approved by the commissioner, appellees attached an email purportedly
from the Texas Department of Insurance in which it is stated that the form ACG 21 34 01 87@
had been approved.  The language in ACG
21 34 01 87@ (a copy of which was also included in the summary
judgment proof) is identical to the language in the form used by Great
American.  Pine Oak makes no arguments respecting the nature of this evidence
and does not argue that the commissioner did not approve the ADesignated Work@
form.





[11]  The exclusions appear designed to exclude from
coverage anything that could possibly leak or otherwise permit moisture to
enter a structure when that structure has EIFS installed on it.  However,
application of the exclusions is not specifically limited to leak or
moisture-intrusion-related damages.





[12]  It should further be noted that Pine Oak makes no
representations regarding the cross-actions filed against it by its
co-defendants in the Barkley lawsuit.  These cross-claims allege only faulty
construction of exterior components, fixtures, or features or the EIFS itself. 
Thus, these claims would also be barred from coverage.





[13]  Again, we do not address this issue with respect to
the Glass case because we held above that the Glass pleadings did not raise
claims falling within the subcontractor exception to the Ayour work@
exclusion.





[14]  It should also be noted that this issue is the basis
for one of the certified questions from the Fifth Circuit to the Texas Supreme
Court in Lamar Homes, Inc. v. Mid-Continent Casualty Co., 428 F.3d 193
(5th Cir. 2005).





[15]  Both Pine Oak and appellees requestCin the event we reverse the summary judgment regarding
indemnityCthat we reverse and remand the case
to the trial court.  We may reverse and remand whenever the interests of
judgment so dictate.  Tex. R. App. P. 43.3;
Lidawi v. Progressive County Mut. Ins. Co., 112 S.W.3d 725, 730 (Tex.
App.CHouston [14th Dist.] 2003, no
pet.).