Argued and submitted October 6, 2003, reversed and remanded January 21, 2004

Norris LOZANO
and Kandace Lozano,
*Appellants,*

*v.*

Miles SCHLESINGER,
*Respondent.*

9910-11535; A113569

84 P3d 816

Michael A. Cox argued the cause and filed the briefs for appellants.

Richard S. Pope argued the cause for respondent. With him on the brief were Brent H. Hall and Newcomb, Sabin, Schwartz & Landsverk, LLP.

Before Landau, Presiding Judge, and Armstrong and Brewer, Judges.

LANDAU, P. J.

**LANDAU, P. J.**

Plaintiffs appeal a summary judgment dismissing their claim of negligence because it is barred by a statute of ultimate repose. We reverse and remand.

The relevant facts are undisputed. Defendant built a house for his own family. He filed a "notice of completion" on May 30, 1989. Such a notice triggers a 75-day period within which potential lien claimants may perfect any construction liens. ORS 87.045. Defendant and his family moved into the house the following month and lived there until 1992, when they sold it to Pavel and Jimison, who lived there for approximately five years.

In June 1997, plaintiffs purchased the house. Within a few months of the purchase, they discovered major water leaks inside the house. The leaks caused severe damage to the house's interior. Ultimately, plaintiffs determined that the leaks were a result of windows and doors that defendant had not properly installed in 1989.

On October 25, 1999, plaintiffs filed a complaint against defendant for negligent construction of the house. Defendant moved for summary judgment on the ground that the action was time-barred. Specifically, he argued that the action had been commenced beyond the 10-year statute of ultimate repose stated in ORS 12.135(1), which provides:

> "An action against a person, whether in contract, tort or otherwise, arising from such person having performed the construction, alteration or repair of any improvement to real property or the supervision or inspection thereof, or from such person having furnished the design, planning, surveying, architectural or engineering services for such improvement, shall be commenced within the applicable period of limitation otherwise established by law; but in any event such action shall be commenced *within 10 years from substantial completion or abandonment of such construction, alteration or repair of the improvement to real property*."

(Emphasis added.) Defendant argued that he had "substantially completed" the construction of the house on May 30, 1989, the date that he filed his notice of completion. As a

result, defendant argued, the complaint that plaintiffs filed on October 25, 1999, was time-barred.

Plaintiffs argued that the house had not been "substantially completed" within the meaning of the statute by May 30, 1989. They relied on the definition of the term "substantial completion" in ORS 12.135(3), which provides:

> "For the purposes of this section, 'substantial completion' means *the date when the contractee accepts in writing the construction*, alteration or repair of the improvement to real property or any designated portion thereof as having reached that state of completion when it may be used or occupied for its intended purpose or, if there is no such written acceptance, the date of acceptance of the completed construction, alteration or repair of such improvement *by the contractee*."

(Emphasis added.) According to plaintiffs, the wording of the statute makes clear that ORS 12.135 applies only when there is a contract of construction and the "contractee accepts in writing the construction." In this case, plaintiffs argued, defendant built his own house. There was no such contract and no such acceptance of construction by a "contractee."

The trial court granted defendant's motion. The court concluded that defendant was, in effect, both the contractor and the "contractee" for the purposes of ORS 12.135 and that the notice of completion that he filed for construction lien purposes served as an acceptance of the construction within the meaning of ORS 12.135(3). The court reasoned that any other reading of the statute would lead to the absurd result of leaving contractors who build their own houses forever subject to claims for negligent construction.

On appeal, plaintiffs argue that the trial court erred as a matter of law in concluding that ORS 12.135 applies to their claim, because there was no acceptance of the construction *by a contractee* more than 10 years before the filing of their complaint. Defendant reiterates the trial court's reasoning that the statute cannot be read literally to require a written acceptance by a party to a construction contract because doing so would lead to absurd results.

Whether ORS 12.135 applies to this case presents an issue of statutory construction, which we resolve by reference to the statute's text in context and, if necessary, legislative history and other aids to construction. *PGE v. Bureau of Labor and Industries,* 317 Or 606, 610-12, 859 P2d 1143 (1993).

At issue is what is meant by the "substantial completion" of construction that triggers the 10-year period of ultimate repose in ORS 12.135. The statute defines the term to mean "the date when the contractee accepts in writing" the completion of the construction. ORS 12.135(3). We cannot ignore the wording of the statute, which requires an acceptance by a "contractee." The question for us is what the legislature intended the term to mean.

Interestingly, the word "contractee" cannot be found in the usual dictionary to which Oregon courts turn for common definitions. The word appears to be a linguistic innovation of the legal profession, an example of the practice in the law of indicating the human object of an action simply by adding the suffix "-ee" to the verb. The practice, which dates from the Law French of the middle ages, is quite common and has resulted in a number of legal neologisms, only some of which may be found in ordinary speech. *See generally* Bryan A. Garner, *A Dictionary of Modern Legal Usage* 205-06 (1987) (noting such verbal creations as "acquittee," "arrestee," "conscriptee," "detainee," "educatee," "expellee," "inauguree," "indictee," "liberee," "permitee," "selectee," "smugglee," and "telephonee"); Peter M. Tiersma, *Legal Language* 98-100 (1999) ("asylee," "condemnee," "discriminatee," "tippee").

"Contractee" is perhaps among the less idiosyncratic of those creations. Indeed, it appears to be a quite common expression, particularly in construction contracts; it refers to the recipient of the services of a contractor. *See, e.g., Thompson v. Coats,* 274 Or 477, 483, 547 P2d 92 (1976) (noting "the general rule that the contractor is not liable to a third person receiving injury or damage as a result of the negligent construction of the work, after the completion and acceptance thereof by the contractee or owner"); *Yowell v. General Tire & Rubber,* 260 Or 319, 324, 325-26, 490 P2d 145 (1971) (referring to the "duty owed by a contractee to the

workman of an independent contractor who has been employed to perform services"); *see also Virden v. Betts and Beer Const. Co., Inc.*, 656 NW2d 805, 807 (Iowa 2003) ("a building or construction contractor is liable for injuries * * * occurring after the completion of his work and its acceptance by the contractee"); *Scoccolo Const., Inc. v. City of Renton*, 102 Wash App 611, 612-13, 9 P3d 886 (2000) (upholding construction contractor's contractual right to recover damages from "contractee" due to delays in the completion of work).

In that light, the legislature's use of the term "contractee" in ORS 12.135(3) makes sense. To begin with, the text of the statute suggests that the "person performing the construction, alteration or repair" is different from the "contractee [who] accepts in writing the construction, alteration or repair." If the two persons were the same, it stands to reason that the legislature would have used the same term to refer to them. In a similar vein, in specifying that the contractee must "accept" the construction, alteration, or repair, the phrasing of the statute suggests that some other person is involved; it makes no sense to refer to a contractee "accept[ing]" construction, alteration or repair from himself or herself. The phrasing of the statute thus suggests that, consistently with the common usage of the term "contractee," the statute was intended to apply when the recipient of services under a construction contract accepts in writing the completion of those services.

Moreover, as the Oregon Supreme Court explained after reviewing the legislative history of the statute, the enactment of ORS 12.135 "began with the objective of fixing a starting date for applying the statutory time limits to actions *against construction contractors*." *Securities-Intermountain v. Sunset Fuel*, 289 Or 243, 250, 611 P2d 1158 (1980) (emphasis added). Plainly, the targets of the statute are claims that arise out of negligent performance of construction contracts.

■    In this case, it is undisputed that there was no written acceptance of the services of a contractor by a "contractee" within the meaning of the statute. Defendant built his own house and then moved into it. ORS 12.135 does not apply, and the trial court erred in reaching a contrary conclusion.

Defendant's argument that reading the statute in that fashion would lead to absurd results is unavailing. First, as the Supreme Court explained in *State v. Vasquez-Rubio*, 323 Or 275, 282-83, 917 P2d 494 (1996), the maxim of statutory construction that courts will attempt to avoid absurd results

> "is best suited for helping the court to determine which of two or more plausible meanings the legislature intended. In such a case, the court will refuse to adopt the meaning that would lead to an absurd result that is inconsistent with the apparent policy of the legislation as a whole. When the legislative intent is clear from an inquiry into text and context, or from resort to legislative history, however, it would be inappropriate to apply the absurd-result maxim. If we were to do so, we would be rewriting a clear statute based solely on our conjecture that the legislature could not have intended a particular result."

In this case, defendant has identified no plausible alternative reading of the reference to acceptance by a "contractee" as the triggering event for the application of ORS 12.135. Thus, the maxim on which he relies has no application.

Second, defendant's argument that construing the statute by its terms would lead to absurd results rests on a false premise. He assumes that, if ORS 12.135 does not apply to cases in which a contractor constructs his or her own house, then such contractors are forever exposed to potential liability for negligent construction. It does not necessarily follow, however, that, because one statute of ultimate repose does not apply, others do not apply either.

Indeed, it could be argued that, in this case, the trial court merely invoked the wrong statute when it concluded that plaintiffs' claim is time-barred. ORS 12.115(1) provides that no action for negligent injury to person or property of another "shall be commenced more than 10 years from the date of the act or omission complained of." In this case, it could well be asserted that the act or omission complained of is the construction of the doors and windows, which probably occurred some time before defendant occupied the house in June of 1989—more than 10 years before the filing of plaintiffs' complaint.

■ Defendant did not make such an argument at trial. Even assuming that we could take notice of the applicability of ORS 12.115 for the first time on appeal, *see, e.g., Miller v. Water Wonderland Improvement District,* 326 Or 306, 309 n 3, 951 P2d 720 (1998) ("the parties may not prevent a court from noticing and invoking an applicable statute by relying only on other sources of law"), we are not permitted to affirm a judgment under the "right for the wrong reason" principle when the losing party might have created a different record before the trial court had the prevailing party asserted the alternative argument. *Outdoor Media Dimensions Inc. v. State of Oregon,* 331 Or 634, 659-60, 20 P3d 180 (2001).

In this case, although it might be reasonable to infer that the windows and doors that were the source of plaintiffs' property damage were constructed before defendant occupied the house in mid-1989, plaintiffs did not have the opportunity to establish that, in fact, the windows and doors were constructed some time later. Because plaintiffs might have created a different record had defendant invoked ORS 12.115, we will not entertain its applicability to this case for the first time on appeal.

Reversed and remanded.