Argued and submitted March 21, reversed and remanded December 12, 2012

SUNSET PRESBYTERIAN CHURCH,
an Oregon non-profit corporation,
*Plaintiff-Appellant,*

*v.*

BROCKAMP & JAEGER, INC.,
an Oregon corporation;
Anderson Roofing Co.,
an Oregon corporation;
Shupe Roofing, Inc., fka Epuhs, Inc.
and/or Dial One Shupe Roofing,
an Oregon corporation;
Positive Construction, Inc.,
an inactive Oregon corporation;
Woodburn Masonry,
an Oregon corporation;
Sharp & Associates, Inc.,
an Oregon corporation;
and Portland Sheet Metal Works, Inc.,
an Oregon corporation,
*Defendants-Respondents,*

*and*

DIVERS WINDOW & DOOR, INC.,
an inactive Oregon corporation; et al,
and The Harver Company,
an Oregon corporation,
*Defendants.*

Washington County Circuit Court
C091601CV; A146006

295 P3d 62

Daniel Goldstein argued the cause for appellant. On the briefs were Phillip E. Joseph, James C. Prichard, Daniel R. Webert, and Ball Janik, LLP.

Anne Cohen argued the cause for respondent Brockamp & Jaeger, Inc. With her on the brief were Bruce R. Gilbert and Smith Freed & Eberhard P.C.

Jonathan W. Henderson argued the cause for respondent Portland Sheet Metal Works, Inc. With him on the brief were Elizabeth E. Lampson and Davis Rothwell Earle & Xochihua P.C.

Michael T. Stone filed the brief for respondent Anderson Roofing Co.

John W. Kendall, III and Blunck & Walhood, LLC filed the brief for respondent Positive Construction, Inc.

Rima I. Ghandour, Ann V. Wolf, and Wiles Law Group, LLC, filed the brief for respondent Sharp & Associates, Inc.

Daniel L. Dvorkin, Betsy A. Gillaspy, Salmi & Gillaspy, PLLC, Rima I. Ghandour, Lydia M. Godfrey, and Wiles Law Group, LLC, filed the brief for respondent Shupe Roofing, Inc.

Norma S. Ninomiya filed the brief for respondent Woodburn Masonry.

Before Armstrong, Presiding Judge, and Haselton, Chief Judge, and Duncan, Judge.

ARMSTRONG, P. J.

**ARMSTRONG, P. J.**

Plaintiff appeals a judgment for defendants, assigning error to the trial court's grant of summary judgment to defendants, which was based on the court's conclusion that plaintiff's claims were time barred. We conclude that the trial court erred in granting summary judgment and, accordingly, reverse and remand.

Plaintiff is a Portland church. Defendants are the general contractor with which plaintiff contracted to construct the first phase of a new church facility and some of the subcontractors that worked on aspects of it. Plaintiff began to hold religious services in the new facility in February 1999 and held a dedication event for it the weekend of March 13 and 14 of that year. After that weekend, construction work continued to be performed on the facility, including changes to the system, fire-alarm system, and landscaping.

On March 16, 2009, plaintiff filed an action against defendants based on alleged defects in the construction of the facility, asserting, as relevant, claims for negligence and negligence *per se*. All defendants moved for summary judgment on the ground that the claims asserted against them were time barred.

The general contractor contended that the two-year statute of limitation for plaintiff's negligence claims had begun to run in 1999 and barred plaintiff's claims against it. It relied on a provision in its contract with plaintiff that provided that all statutes of limitation for claims arising from the construction of the facility would begin to run from the "date of substantial completion" of the facility, which, according to the general contractor, occurred when plaintiff occupied and used the facility for its intended purpose in 1999. The trial court agreed with the general contractor's interpretation of the contract and granted its motion.

The subcontractors contended that two statutes of ultimate repose, ORS 12.115 and ORS 12.135, barred plaintiff's claims against them. Those statutes impose 10-year repose periods that, according to the subcontractors, began to run more than 10 years before plaintiff filed its claims. The trial court concluded that ORS 12.135 was the

applicable statute of ultimate repose and that it had begun to run no later than March 14, 1999. Thus, because plaintiff filed its action on March 16, 2009, the court concluded that its claims against the subcontractors were time barred.

Plaintiff appeals, assigning error to the trial court's grant of summary judgment to defendants. Because the grounds on which the trial court granted summary judgment to the general contractor and the subcontractors differ, we address the arguments relating to them separately.

As noted, the general contractor relied on the accrual clause in the parties' contract to establish that plaintiff's claims against it were time barred. The accrual clause, which is in paragraph 13.7.1.1 of the contract, provides that any claim for acts and omissions occurring before the date of substantial completion of the improvement shall be deemed to have accrued, and any applicable statutes of limitation shall begin to run, no later than the "date of substantial completion" of the improvement. The contract defines the date of substantial completion as "the date certified by the Architect in accordance with Paragraph 9.8."

Paragraph 9.8.1 provides that "Substantial Completion is the stage in the progress of the Work when the Work or designated portion thereof is sufficiently complete in accordance with the Contract Documents so the Owner can occupy and utilize the Work for its intended use." Paragraph 9.8.2 provides, in turn, as relevant:

> "When the Contractor considers that the Work *** is substantially complete, the Contractor shall prepare and submit to the Architect a comprehensive list of items to be completed or corrected. *** Upon receipt of the Contractor's list, the Architect will make an inspection to determine whether the Work or designated portion thereof is substantially complete. *** When the Work or designated portion therefore is substantially complete, the Architect will prepare a Certificate of Substantial Completion which shall establish the date of Substantial Completion[.] *** The Certificate of Substantial Completion shall be submitted to the Owner and Contractor for their written acceptance of responsibilities assigned to them in such Certificate."

The general contractor contends that, pursuant to the accrual clause, the two-year statute of limitation for plaintiff's negligence claims, ORS 12.110(1), began to run in 1999 when the improvement reached the state of completion at which it could be occupied and used by plaintiff for its intended purpose. We disagree.

The accrual clause provides that statutes of limitation will run from the date of substantial completion, not from the date on which the improvement is substantially complete. The term "date of substantial completion" is defined in the contract as the date certified by the architect pursuant to paragraph 9.8, and paragraph 9.8.2 provides, in turn, that the certificate of substantial completion "shall establish the date of Substantial Completion."

The general contractor submitted no evidence establishing the date that was certified by the architect in the certificate of substantial completion as the date of substantial completion of the improvement. It argued, instead, that the accrual clause runs from the date on which the improvement was substantially complete, as defined in paragraph 9.8.1. When read in context, paragraph 9.8.1 provides the general contractor and the architect with the criterion by which to determine when the general contractor should submit its request for issuance of a certificate of substantial completion and when the architect should issue the certificate. For us to interpret the accrual clause according to the more general definition of substantial completion in paragraph 9.8.1 would ignore the parties' decision to use the defined term "date of substantial completion" in the accrual clause. *See* ORS 42.240 (providing that the objective in construing a contract is to give effect to the parties' intention); *Andres v. American Standard Ins. Co.*, 205 Or App 419, 423-24, 134 P3d 1061 (2006) (explaining that the objective in construing a contract is to determine the intent of the parties, particularly in accordance with any definitions included in the contract). Therefore, we conclude that, under the accrual clause, statutes of limitation begin to run from the date certified by the architect in the certificate of substantial completion as the date that the improvement was substantially complete.

Because the only ground on which the general contractor relied for summary judgment was that plaintiff's claims were time barred pursuant to the accrual clause, which is an affirmative defense on which the general contractor bears the burden of proof at trial, the general contractor bore the burden of producing sufficient evidence to support the defense. ORCP 47 C; *Fredericks v. Universal Underwriters Ins. Co.*, 140 Or App 269, 280-81, 915 P2d 472 (1996). The general contractor submitted no evidence establishing the date on which the architect certified the improvement to be substantially complete pursuant to paragraph 9.8 and, therefore, failed to offer evidence establishing when the statute of limitation for plaintiff's negligence claims began to run. Consequently, the trial court erred in granting the general contractor's summary judgment motion.[1]

Each of the subcontractors involved in the appeal filed its own motion for summary judgment against plaintiff. Because there is no material factual difference among the subcontractors, we do not distinguish among them in our discussion of the court's grant of summary judgment to them.

ORS 12.135 establishes a 10-year repose period for all claims arising from the construction, alteration, or repair of an improvement to real property. It provides, as relevant, that an

"action against a person * * * arising from such person having performed the construction, alteration or repair of any improvement to real property or the supervision or inspection thereof * * * shall be commenced within the applicable period of limitation otherwise established by law; but in any event such action shall be commenced within 10 years of substantial completion"

---

[1] The general contractor contends that it is entitled to enforce the accrual provision despite its failure to offer evidence establishing the date certified by the architect in the certificate of substantial completion as the date of substantial completion. It relies on paragraph 13.4.2, which provides that "[n]o action or failure to act by the Owner, Architect or Contractor shall constitute a waiver of a right or duty afforded them under the Contract, nor shall such action or failure to act constitute approval of or acquiescence in a breach thereunder." Nothing in the language of paragraph 13.4 operates to supply the date of substantial completion, which must be established in order for the general contractor to rely on the accrual clause to begin the running of the applicable statute of limitation.

of the construction, alteration, or repair of the improvement. ORS 12.135(1).[2] Plaintiff's negligence claims against the general contractor and the subcontractors come within that statute.

Some subcontractors contend, however, that the claims also are subject to ORS 12.115, which establishes a 10-year repose period for negligence claims. That statute provides, as relevant, that no "action for negligent injury to person or property of another [shall] be commenced more than 10 years from the date of the act or omission complained of." Contrary to the subcontractors' contention, ORS 12.135(1) controls over the more general repose statute for negligence claims, *viz.*, ORS 12.115. ORS 12.135(1) applies specifically to claims against a person arising from that person's construction of an improvement to real property "whether in contract, tort or otherwise." Accordingly, it controls over the more general negligence provision of ORS 12.115 and is the repose statute that applies to plaintiff's claims. *See Kambury v. DaimlerChrysler Corp.*, 334 Or 367, 374, 50 P3d 1163 (2002) (statute of limitation applying to claims for death caused by product defects is more specific, and therefore "must control over the more general wrongful death statute of limitations"); *Lozano v. Schlesinger*, 191 Or App 400, 405, 84 P3d 816 (2004) ("the targets of [ORS 12.135(1)] are claims that arise out of negligent performance of construction contracts").[3]

As quoted above, the 10-year repose period for a claim that is subject to ORS 12.135 begins to run from the date of substantial completion of the construction, alteration, or repair of the improvement that gave rise to the claim. ORS 12.135(3) defines "substantial completion" to mean

---

[2] The legislature amended ORS 12.135 after plaintiff filed its action. *See* Or Laws 2009, ch 715, § 1. Those amendments, which became effective on January 1, 2010, do not apply to this case. Consequently, all references to ORS 12.135 in this opinion are to the pre-2009 version.

[3] We held in *Lozano* that ORS 12.135(1) does not apply to cases in which a contractor constructs his or her own house because the phrasing and text of the statute contemplates that it applies only when (as in this case) the person who performed the construction is different from the recipient of those construction services. 191 Or App at 405. We noted, without deciding, that ORS 12.115(1) may have applied under the particular circumstances in *Lozano*. *Id.* at 406-07.

"the date when the contractee accepts in writing the construction, alteration or repair of the improvement to real property or any designated portion thereof as having reached that state of completion when it may be used or occupied for its intended purpose or, if there is no such written acceptance, the date of acceptance of the completed construction, alteration or repair of such improvement by the contractee."

According to the subcontractors, the reference to the "contractee" in the statute can encompass a general contractor that has entered into contracts with subcontractors for the construction, alteration, or repair of an improvement. Thus, the subcontractors contend that the 10-year repose period on a claim against a subcontractor can begin to run when the general contractor accepts the completed construction, alteration, or repair work of the subcontractor. We readily reject that understanding of the statute.

If the subcontractors were correct, then, rather than establishing a single repose period for claims for the construction, alteration, or repair of an improvement, ORS 12.135 could create a number of them, including competing periods. In this case, for example, there could be separate, 10-year periods that would apply to the work of each subcontractor, based on the general contractor's acceptance of each subcontractor's completed work, as well as a different and competing 10-year period for the same work, based on plaintiff's acceptance of the completed work of the general contractor.

As it is, the legislative history of ORS 12.135 makes clear that the contractee to whom the statute refers is the person, typically the owner or developer, for whom the improvement is constructed, altered, or repaired. That history also provides insight into the circumstances under which acceptance occurs when there is no written acceptance.

The proponents of ORS 12.135 told the legislature that the repose period under the statute would run from the date on which a general contractor transfers control of a completed improvement to the person who had contracted for its construction. *See* Tape Recording, House State and

Federal Affairs Committee, Subcommittee on Financial Affairs, HB 1259, May 10, 1971, Tape 16, Side 2 (statement of Preston Heifield). They went on to explain that such a transfer occurs when the person takes responsibility from the contractor for the maintenance, alteration, and repair of the improvement. *Id.*; Tape Recording, Senate State and Federal Affairs Committee, HB 1259, May 24, 1971, Tape 14, Side 2 (statement of Preston Heifield).[4] Nothing in the legislative history undercuts those statements or suggests in a case such as this—*viz.*, one in which a general contractor is constructing an improvement for an owner—that a general contractor could be a contractee who could accept the completion of an improvement for purposes ORS 12.135 and thereby begin the running of the applicable 10-year repose period under the statute.

Moreover, we understand the foregoing statements to refer to circumstances in which there is not a written acceptance of an improvement for purposes of ORS 12.135(3). Those circumstances contrast in a meaningful way from those in which an acceptance is made in writing. In the latter case, the contractee accepts in writing that the improvement or a designated portion thereof has reached the state of completion in which it may be used or occupied for its intended purposes. Typically, if not invariably, more work remains to be done to complete the work on the improvement, but the improvement can, in fact, be used and, for any number of reasons, the contractee is prepared to accept that.

The contractual provision on which the general contractor relies for its statute-of-limitation defense in this case nicely illustrates the mechanics of such an acceptance. Under it, when the general contractor believes that the improvement is substantially complete—which the contract defines in terms equivalent to those that apply under ORS 12.135 to a written acceptance of an improvement as substantially complete—the general contractor can submit to the architect a list of items that remain to be completed or corrected. The architect will inspect the improvement

---

[4] One of the subcontractors disputes the import of that legislative history on the ground that Heifield's testimony addressed language that was not included in the final version of the statute. Our review of the legislative history indicates that the subcontractor is mistaken.

and, if the architect determines that the improvement or a designated portion thereof is substantially complete, then the architect will prepare a certificate of substantial completion to submit to the owner and the general contractor "for their written acceptance of [the] responsibilities assigned to them" in the certificate.

The assignment of responsibilities between the owner and general contractor is significant. Because work on the improvement will not be complete—it will be only substantially complete—both the owner and the general contractor can be expected to have shared, if different, responsibilities for the maintenance, alteration, and repair of the improvement, and the certificate issued by the architect can be expected to delineate their respective responsibilities.

In contrast, if the contractee does not accept in writing that the improvement or a designated portion thereof has reached the state of completion at which "it may be used or occupied for its intended purpose," then substantial completion for purposes of beginning the repose period under ORS 12.135 occurs at a later point, *viz.*, when the contractee accepts the "completed construction, alteration or repair of the improvement." As the proponents of ORS 12.135 explained, the latter point is reached when the contractee takes from the contractor responsibility for the maintenance, alteration, and repair of the improvement, which typically, if not invariably, will be the point at which little or no work remains to be done by the contractor. In other words, in contrast with written acceptance, under which the contractee and contractor may share responsibility for the maintenance, alteration, and repair of the improvement, acceptance of the completed construction, alteration, or repair of the improvement occurs when there is no shared responsibility for those tasks.

Here, plaintiff is the contractee that had to accept its new facility in order to begin the running of the 10-year repose period under ORS 12.135. Because the subcontractors submitted no evidence to establish that plaintiff accepted the facility in writing, the subcontractors had to submit evidence to establish that there was no disputed issue of

fact about whether plaintiff accepted the facility as complete more than 10 years before it filed its action on March 16, 2009. In other words, they had to establish that there was no factual dispute about whether plaintiff took from the general contractor responsibility for the maintenance, alteration, and repair of the facility before March 16, 1999.

We conclude that they failed in that task. Plaintiff submitted evidence that construction work continued after March 14, 1999, specifically identifying changes to the system, fire-alarm system, and landscaping. A reasonable trier of fact could conclude that plaintiff had not assumed responsibility for the maintenance, alteration, and repair of the improvement until after that work was complete. Hence, a genuine issue of material fact exists regarding whether substantial completion occurred more than 10 years before plaintiff filed its claims, and it was error for the trial court to grant summary judgment to the subcontractors on the ground that ORS 12.135 barred plaintiff's claims against them.

Reversed and remanded.